James K. Betterton was indicted for the unlawful possession of cocaine. After an evidentiary hearing, the trial court granted the defendant's motion and suppressed the cocaine as having been seized without probable cause. Pursuant to Rule 17, A.R.Cr.P. Temp., the State appealed from the court's order. We find that the cocaine was properly seized and reverse the circuit court's order of suppression.
The facts are not disputed. At approximately 1:40 on the morning of the 10th of November 1985, Gadsden police officers Troy Higdon and Jackie McClendon were on routine patrol in Paseur Park. This area, also called the "Brow", was known as a "lover's lane." Officer Higdon testified that the area was "usually for parkers or if you wanted to take your girlfriend up there and park or go up there and drink a beer or something, you know, in the privacy of your car."
The officers observed a car parked off the road overlooking the city. Three males were sitting in the front seat. An unoccupied car was parked directly behind this car. There were no other cars in the area.
The officers investigated. Officer Higdon testified, "We just got out to check and see . . . if we could help them with anything or if they were having trouble or what they were doing." Officer Higdon went to the driver's side and knocked on the window. When the driver rolled the window down "the odor of marijuana was real evident, it just about knocked you down." The officer asked the driver to get out of the car. When the driver did so, Officer Higdon observed "what appeared to be marijuana seeds all over the front seat and in the floorboard." Higdon found "little small roaches, what's left of marijuana cigarettes" in the ashtray. The officer opened a "tape case" which he had seen the driver "clutching in his hand" and discovered "a small bag of white substance, a razor blade, . . . a mirror, . . . and also a small glass straw."
After opening the tape case, the officers removed the defendant and the third occupant from the front seat and searched the car. They found "some bullets for [a] .38 or .357" and two meat hooks "stuck up under the seat." After Officer Higdon found the bullets, he asked Officer McClendon "to pat the men down for a weapon." In the watch pocket of the defendant's blue jeans, McClendon found a small glass container of cocaine. Before being searched, the three occupants of the car were placed under arrest and advised of theirMiranda rights.
 I
It is apparent from the record that the trial court granted the motion to suppress because he found nothing to justify "the *Page 745 
initial stopping and asking for identification."
Officer Higdon's conduct in approaching the car and knocking on the driver's window did not constitute either a stop or a seizure. It is well settled that not every encounter between police officers and citizens constitutes a seizure within the protection of the Fourth Amendment. United States v.Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877,64 L.Ed.2d 497 (1980); Terry v. Ohio, 392 U.S. 1, 19, n. 16,88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968). "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." Terry, 392 U.S. at 34,88 S.Ct. at 1886 (Justice White, concurring). A stop "of a restricted investigative scope conducted in a non-coercive manner . . . [does] not trigger Fourth Amendment protection at all." United States v. Willis, 759 F.2d 1486, 1495 (11th Cir.), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119
(1985).
The test to determine whether a driver of a parked automobi]e has been "seized" before he is ordered to leave the car "is whether police engaged in a show of authority which would lead a reasonable person, innocent of any crime, to conclude he was not free to go under all the circumstances." United States v.Castellanos, 731 F.2d 979, 983 (D.C. Cir. 1984); United Statesv. Pajari, 715 F.2d 1378, 1381 (8th Cir. 1983). Here, Officer Higdon merely approached and knocked on the window of a car parked in a public place late at night. Before the driver responded by rolling down the window, the officer had given no instructions and asked no questions. He had exercised no display of force or show of authority as by drawing his weapon or turning on the blue lights of the patrol car. Even "a request for identification cannot constitute a show of authority sufficient to convert an innocent encounter into a seizure." Castellanos, 731 F.2d at 983.
In this case, we conclude that there was no "stop" or "seizure" until the driver was directed to leave his car, which was prompted by Officer Higdon's reasonable belief that the car contained illegal drugs. Worthy v. State, 473 So.2d 634, 636
(Ala.Cr.App. 1985) ("There was no 'stop' in this case because the defendant was sitting in a parked car when approached by the two officers."); Atchley v. State, 393 So.2d 1034, 1040-45
(Ala.Cr.App. 1981) (There was no stop or seizure where officers approached defendant as he slept in parked car, asked for identification, and questioned him as to his activities.). See also cases cited at W. LaFave, 3 Search and Seizure § 9.2, note 105.1, p. 37, 1986 Pocket Part (1978).
Because there was initially no stop or seizure, the officers did not need probable cause to believe that there was criminal activity in progress before approaching the car. 3 Search andSeizure § 9.2(g). Moreover, we find that the action of the police in this situation was neither arbitrary nor unreasonable. We know from other cases presented for appeal that it is not unusual to find that secluded outdoor areas which men and women frequent to enjoy each other's company in the "privacy" of their car have become the location for the commission of violent crime including abduction, assault, robbery, rape, and murder. In our opinion, the circumstances of this case — the late hour, the location of the two cars, the location of the three men in one car, the absence of anyone in the second car — provided a reasonable suspicion that foul play might have been involved. However, finding that there was no stop or seizure initially, we need not hold, as did the Supreme Court of California, that "the presence of two men in a parked automobile on a lover's lane at night was itself reasonable cause for police investigation." People v. Martin,46 Cal.2d 106, 293 P.2d 52, 53 (1956).
 II
Once Officer Higdon recognized the smell of marijuana coming from the opened window of the car, he had probable cause to order the occupants out of the car and to search the car.Pajari, 715 F.2d at 1382. "[A] police officer may rely on an aroma of marijuana to give him probable cause to suspect that contraband is present *Page 746 
and may be concealed in other areas of the automobile."Sterling v. State, 421 So.2d 1375, 1381 (Ala.Cr.App. 1982). "In considering whether detection of the odor of narcotic drugs, standing alone, provides probable cause for a warrantless search, the courts generally have taken the position that the odor of marijuana is sufficient to permit law enforcement officers to conduct a search without a warrant, at least where they are trained or experienced in detecting marijuana by its smell." Annot., 5 A.L.R.4th 681, 685 (1981). See also Jones v.State, 432 So.2d 19, 22 (Ala.Cr.App. 1983). Probable cause to believe that an illegal substance is present may be established by smell. Johnson v. United States, 333 U.S. 10, 13,68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).
 "It appears to be generally accepted that the smell of marijuana in its raw form or when burning is sufficiently distinctive to come within the rule of the Johnson case. Consequently, the courts have found probable cause to search when the distinctive odor of marijuana is found emanating from a particular place and have likewise found probable cause to arrest when the odor was detected coming from a particular person." 1 Search and Seizure at 649.
Since there was probable cause to believe that the car contained marijuana, United States v. Johns, 469 U.S. 478,105 S.Ct. 881, 884, 83 L.Ed.2d 890 (1985) ("After the officers came closer and detected the distinct odor of marijuana, they had probable cause to believe that the vehicles contained contraband."); United States v. Villarreal, 565 F.2d 932, 937
(5th Cir.), cert. denied, 439 U.S. 824, 99 S.Ct. 92,58 L.Ed.2d 116 (1978), there existed probable cause to search the car and ordering the individuals out of the car was reasonable. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.United States v. Ross, 456 U.S. 798, 82021, 102 S.Ct. 2157,2170-71, 72 L.Ed.2d 572 (1982); Oliver v. State,479 So.2d 1385, 1388-89 (Ala.Cr.App. 1985).
Although "the detection of the odor of marijuana in a certainplace will not inevitably provide probable cause to arrest aperson who is at that place," 1 Search and Seizure at 650 (emphasis in original), the circumstances of this case justify the arrest of the three occupants of the car. Officer Higdon testified that the odor of marijuana was "real evident," "real strong," it "just overcame me," "it just about knocked you down." The three occupants of the car were sitting in the front seat. Marijuana cigarettes were found in the ashtray and marijuana seeds were "all over the front seat and in the floorboard." A tape case the driver had shut and "set to the side whenever he started out of the car" contained what appeared to be cocaine and related paraphernalia. Under these circumstances, the officers had probable cause to arrest the three occupants of the car.
Once the occupants of the vehicle had been placed under arrest they could be searched without probable cause or reasonable suspicion to believe that they possessed either weapons or evidence. New York v. Belton, 453 U.S. 454, 461,101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); Michigan v.DeFillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." United States v. Robinson,414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973).
 III
After the trial court granted the defendant's motion to suppress, it also granted the defendant's motion to dismiss when the Assistant District Attorney admitted that he had no case as a result of that ruling. The next day, the prosecutor requested the court to set aside its order granting dismissal which the trial court denied. That same day, two days after the trial court granted the motion to suppress, the State filed notice of appeal.
The defendant contends that the dismissal was the equivalent of an acquittal and further prosecution is barred under the principles of former jeopardy. We reject this argument. *Page 747 
Since the case was dismissed before the empaneling and swearing in of the jury, jeopardy never attached. Mayberry v.Davis, 608 F.2d 1070, 1072 (5th Cir. 1979). "[A]n accused must suffer jeopardy before he can suffer double jeopardy." Serfassv. United States, 420 U.S. 377, 393, 95 S.Ct. 1055, 1065,43 L.Ed.2d 265, 277 (1975). "Without risk of determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." Serfass,420 U.S. at 391-92, 95 S.Ct. at 1064. See also United States v.Mann, 517 F.2d 259, 266 (5th Cir. 1975), cert. denied,423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976). Since a pretrial dismissal of a pending charge does not involve a determination of guilt, it is not the equivalent of an acquittal. "In this state, jeopardy begins when the jury has been impaneled and sworn, and the indictment read. . . . Thus, the defendant was not placed in double jeopardy [by the dropping of charges at a preliminary hearing and subsequent indictment by the grand jury]." Boswell v. State, 290 Ala. 349, 355, 276 So.2d 592
(1973) (citation omitted).
The judgment of the circuit court suppressing the cocaine is reversed and this cause is remanded for further proceedings.
REVERSED AND REMANDED.
All Judges concur.