On March 15, 1986, Gregory Allen Smith was arrested and charged with driving while his license was revoked and driving while under the influence of alcohol. The district court found appellant guilty of both *Page 150 
charges. Appellant appealed his convictions to the circuit court, where he was again found guilty of both charges. For his driving under the influence conviction, appellant was sentenced to ten months' imprisonment in the county jail and fined $1,000 plus court costs. For his driving while revoked conviction, appellant was sentenced to 90 days imprisonment to run concurrently with his earlier sentence.
The State's sole witness was Jimmy W. Smith, an Alabama State Trooper. He testified that on the date in question he and several other officers participated in a roadblock on Moores Mill Road in Madison County. The roadblock was conducted pursuant to a plan devised by Trooper Smith's supervisor and its purpose was to check driver's licenses and equipment violations and to look for intoxicated drivers. Pursuant to this plan, every car was stopped and checked.
Around 11:00 p.m. Trooper Smith observed a car, later identified as being driven by appellant, come around a curve approximately two hundred yards from the roadblock. He noted that the car turned rapidly into a private driveway and stopped some 50 feet from the house. Moreover, the driver turned the vehicle's lights off, but not its engine. Based on these observations, Trooper Smith believed that appellant was avoiding the roadblock. He got into his vehicle, drove down to where the car was, and asked appellant if he lived there. The appellant responded in the negative. He also responded negatively when asked if he knew anyone who lived there. Trooper Smith then asked appellant for a driver's license. When appellant could not produce one, he was asked to accompany Trooper Smith back to his vehicle.
Trooper Smith asked appellant his name, address, and phone number. He noted that appellant appeared to be unsteady on his feet, that he had slowed reflexes, and that he smelled of alcohol. Appellant also failed an alka-sensor test. In Trooper Smith's opinion, appellant was intoxicated. The appellant was then transported to trooper headquarters, where he was administered a PEI test. The results of appellant's PEI test indicated a blood alcohol content of 0.10 percent.
 I
Appellant first argues that the trial court erred by not requiring the prosecution to state its reasons for using two of its peremptory strikes to remove blacks from the jury. Appellant readily admits that he is white, but contends that the rule in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), should apply to him because he was represented at trial by a black attorney. We disagree.
In Batson, the United States Supreme Court stated that in order to establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges, a defendant must first show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the veniremembers of the defendant's race. Batson, supra, 476 U.S. 97,106 S.Ct. at 1723. (Emphasis added.)
The very wording of Batson establishes that the excluded veniremen and the defendant must be of the same race. Such a holding leaves no room for any argument that the excluded veniremen and the defendant's attorney need only be of the same race in order for Batson to apply. We, therefore, hold that the rule of Batson does not apply in cases where black veniremen are removed from the jury of a white defendant. In so holding, we find ourselves in agreement with other jurisdictions on this issue. See Kibler v. State, 501 So.2d 76 (Fla.Dist.Ct.App. 1987); Pope v. State, 256 Ga. 196, 345 S.E.2d 831 (1986); Statev. Christensen, 720 S.W.2d 738 (Mo.App. 1986).
Our holding in this case should not be interpreted to mean that Batson can never apply in situations involving a white defendant. Indeed, we can perceive situations where Batson
would operate to protect the constitutional rights of white defendants. Appellant's case, however, is not one of these situations. The trial court, therefore, correctly determined that appellant *Page 151 
had failed to establish a prima facie violation of the rule ofBatson.
 II
Appellant next argues that Trooper Smith lacked probable cause for arrest when the trooper drove up behind appellant's vehicle and prevented him from leaving the driveway.
In State v. Betterton, [7 Div. 617, Nov. 11, 1986] (Ala.Cr.App. 1986), we held that a police officer did not need probable cause to believe that there was criminal activity in progress before approaching a parked car because his action involved no initial stop or seizure. Presiding Judge Bowen, writing for the Court, stated as follows:
 "It is well settled that not every encounter between police officers and citizens constitutes a seizure within the protection of the Fourth Amendment. United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497
(1980); Terry v. Ohio, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). 'There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets.' Terry, 392 U.S. 34, 88 S.Ct. at 1886
(Justice White, concurring). A stop 'of a restricted investigative scope conducted in a noncoercive manner . . . [does] not trigger Fourth Amendment protection at all.' United States v. Willis, 759 F.2d 1486, 1495 (11th Cir.), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119
(1985).
 "The test to determine whether a driver of a parked automobile has been 'seized' before he is ordered to leave the car 'is whether police engaged in a show of authority which would lead a reasonable person, innocent of any crime, to conclude he was not free to go under all the circumstances.' United States v. Castellanos, 731 F.2d 979, 983 (D.C. Cir. 1984); United States v. Pajari, 715 F.2d 1378 (8th Cir. 1983). Here, Officer Higdon merely approached and knocked on the window of a car parked in a public place late at night. Before the driver responded by rolling down the window, the officer had given no instructions and asked no questions. He had exercised no display of force or show of authority as by drawing his weapon or turning on the blue lights of the patrol car. Even 'a request for identification cannot constitute a show of authority sufficient to convert an innocent encounter into a seizure.' Castellanos, 731 F.2d at 983."
State v. Betterton, supra.
This case differs from Betterton only in that, in the instant case, Trooper Smith drove his vehicle with its blue lights turned on up behind appellant's vehicle, which effectively prevented appellant from leaving. Even at that time, however, the trooper already had a particularized and objective basis for suspecting appellant of criminal activity; thus, a Terry
stop was justified. Terry v. Ohio. supra, 392 U.S. at 21,88 S.Ct. at 1879-80. Trooper Smith testified that he observed appellant's vehicle come around a curve in sight of the roadblock and turn rapidly into a driveway approximately 200 yards from the roadblock. This act made Trooper Smith suspect that appellant was attempting to avoid the roadblock and could possibly be guilty of some traffic violation. Thus, his initial investigatory questioning of appellant was justified.
The presence or absence of probable cause to arrest must be determined by examining the circumstances surrounding the arrest. Nance v. State, 424 So.2d 1358, 1364 (Ala.Cr.App. 1982). A warrantless arrest is valid if the officer making the arrest had probable cause to effect the arrest at the time it was made. Foy v. State, 387 So.2d 321, 324 (Ala.Cr.App. 1980). Probable cause to arrest exists where the facts and circumstances within an officer's knowledge, and of which he had reasonably truthworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been committed or is being committed. Gordv. State, 475 So.2d 900, 902-03 (Ala.Cr.App. 1985).
Appellant's negative responses to the trooper's investigatory questions, coupled *Page 152 
with appellant's failure to produce a driver's license, established probable cause for his arrest for driving with a suspended or revoked license. Moreover, when Trooper Smith asked appellant to come back to his squad car to receive his traffic ticket, appellant's unsteady gait and the smell of alcohol on his breath provided the trooper with probable cause to believe that appellant had been driving while under the influence of alcohol. Therefore, appellant's arrest for driving under the influence of alcohol was legal.
 III
Appellant next contends that he was not advised of hisMiranda [v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966)] rights. The Miranda procedural safeguards are required only when the suspect's statements given in answer to custodial interrogation are to be offered in evidence against him. Miranda does not apply to traditional investigatory functions such as general on-the-scene questioning. Boggan v.State, 455 So.2d 228, 236 (Ala.Cr.App. 1984). Therefore, it was not necessary for Trooper Smith to inform appellant of hisMiranda rights prior to propounding any questions.
 IV
Appellant last argues that the execution of the roadblock by the State Troopers was in violation of the requirements set forth in Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391,59 L.Ed.2d 660 (1979). We disagree.
In that case, the United States Supreme Court held that random spot checks of vehicles for documents by law enforcement officials were in violation of the Fourth Amendment to the United States Constitution. Delaware v. Prouse, supra,440 U.S. at 663, 99 S.Ct. at 1401. However, the Supreme Court made it clear that a state was free to develop other methods for spot checks which involved less intrusion or did not involve the "unconstrained exercise of discretion." Id. The "[q]uestioning of all oncoming traffic at roadblock-type stops" was one suggested alternative. Id.
Such was the case here. The testimony established that the troopers were stopping each car that approached the roadblock. Furthermore, the roadblock was conducted pursuant to a specified plan. It was also carried out in such a way so that only a minimal wait was involved for each motorist. We hold that this roadblock met the requirements set forth inDelaware v. Prouse, supra, and resulted in no violation of the appellant's constitutional rights.
The judgment of the trial court is, therefore, due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 153 
[EDTORS' NOTE: PAGES 153 — 160 CONTAINS DECISIONS WITHOUT OPINION.] *Page 693