602 A.2d 1328

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Matthew A. METZ, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 3, 1991.

Filed Feb. 4, 1992.

Patrick J. Thomassey, Monroeville, for appellant.

Michael W. Streily, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before WIEAND, KELLY and POPOVICH, JJ.

POPOVICH, Judge:

We are confronted for the first time with an issue involving the legality of a police stop at a roadblock. This issue presents itself in an appeal from judgment of sentence entered September 28, 1990, in the Court of Common Pleas of Allegheny County following the appellant's conviction on, *inter alia,* two misdemeanor counts of possession of a controlled substance, one misdemeanor count of carrying a firearm without a license and one misdemeanor count of possessing a firearm illegally as a former convict. The sole issue raised by appellant, Matthew A. Metz, is whether the court below erred in denying his motion to suppress evidence obtained as a result of an automobile stop. We affirm.

Our standard of review is clear. As we stated in *Commonwealth v. Fromal,* 392 Pa.Super. 100, 572 A.2d 711 (1990):

> In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so

much of the evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Id.*, 392 Pa.Superior Ct. at 111, 572 A.2d at 717.

The relevant facts are fairly summarized in the Commonwealth's brief, as follows:

On July 1, 1988 at approximately 11:30 p.m., the Pennsylvania State Police had, pursuant to Pa.C.S. § 6308(b), established a systematic roadblock at the entrance to the Blair Heights Housing Project in Clairton and were stopping vehicles to check for registration, proof of insurance and driver's license. Marked state police vehicles were at the scene (Trial Transcript at 18–19).

While performing the road check, Trooper Raymond Paul noticed a 1967 Pontiac convertible pull up to the check area. The vehicle came to a sudden stop and immediately started to back up and pull away from the officers. The officers immediately pursued the car and stopped it.

Once the vehicle was stopped the officers approached appellant who was driving the car and asked him to step out of the car and produce his driver's license and registration. When appellant got out of his car Trooper Paul observed in plain view from outside the vehicle, a .357 magnum 'down alongside of the driver's seat.' (Trial Transcript 21–23, 34–40). The passengers were then ordered out of the car. The officer recovered the weapon and found it to be fully loaded. Drug paraphernalia was found in the back seat. Appellant did not have a license to carry the gun and later informed police that the weapon had been lent to him as collateral for a loan. (Trial Transcript at 30–31, 55). Appellant was arrested and transported to the police station. Eight packets of heroin and nine packets of cocaine were later discovered

in the patrol car behind the seat where appellant was sitting. (Trial Transcript at 26–30, 56–57).

Brief for Appellee, at 10–11.

■ Appellant does not challenge the legality of the systematic road check. Instead, appellant asserts that the police officers did not possess an adequate reason to stop his vehicle. Appellant contends that his having stopped at the check area and backed his vehicle away from the police officers was not a violation of the Vehicle Code, nor could it have provided the officers with reasonable suspicion that criminal activity was afoot.[1]

■ Proceeding to the merits of appellant's argument, we note that our research has disclosed no opinion of an appellate court of this Commonwealth which addresses the issue of whether a motorist's stopping and turning his vehicle before reaching a police roadblock could, *per se*, provide the officers conducting the roadblock with reasonable suspicion that criminal activity was afoot or that the motorist was in violation of the Vehicle Code.[2]

1. We note that the Commonwealth contends that appellant waived this issue by failing to raise it specifically in his post-trial motions, which were filed *pro se*. However, because appellant raised the issue in pre-trial motions, albeit in a "boilerplate" fashion, and the lower court found the language in appellant's motion for a new trial and arrest of judgment sufficiently specific to address this issue on its merits, it is preserved for our review. *Cf., Commonwealth v. Sopota,* 403 Pa.Super. 1, 587 A.2d 805 (1991).

2. We note that it is well established that roadblocks conducted in compliance with Section 6308(b) of the Vehicle Code and the relevant case law do not violate the Constitution of our Commonwealth. *See, Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), *Commonwealth v. Fioretti,* 371 Pa.Super. 535, 538 A.2d 570 (1988), *Commonwealth v. Myrtetus,* 397 Pa.Super. 299, 580 A.2d 42 (1990).

At the time of the incident in question, Section 6308(b) of the Vehicle Code provided as follows:

**(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may

Several of our sister states have, however, ruled on this question. In *Snyder v. State,* 538 N.E.2d 961 (Ind.Ct.App. 1989), a state trooper stopped appellant after he made a U-turn approximately 100 yards from a police roadblock. The appellant had committed no traffic violations and was not driving erratically, but was stopped because it appeared to the trooper as though he was trying to avoid the roadblock. *Id.* at 963.

Subsequent to the stop, the trooper saw alcohol containers in appellant's vehicle and detected alcohol on his breath. Tests revealed that appellant had a blood alcohol content over the legal limit. He was arrested and charged with operating a vehicle while intoxicated and operating a vehicle with .10% or more alcohol in his blood. *Id.* at 963.

Upholding the trial court's denial of appellant's motion to suppress evidence procured as a result of an unlawful stop, the District Court of Appeals of Indiana stated:

If police officers stationed at roadblocks were not permitted to stop such drivers, the very drivers the police seek to deter could flagrantly avoid the roadblocks and the stops would lose their deterrent value. [One of the troopers] testified that he had pursued and stopped drivers on numerous occasions who sought to avoid roadblocks and inevitably those drivers had suspended or expired licenses, or some other violation of the law.... His experience gave him specific and articulable facts and inferences drawn therefrom to form a reasonable suspicion that Snyder was committing a crime. Such might not always be the case when an officer sees a driver avoid a police roadblock. Likewise, a driver who simply turns

reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.Cons.Stat.Ann. § 6308(b), as amended 1985, June 19, P.L. 49, No. 20, § 10, effective in 60 days.

Since, however, the appellant does not question whether the roadblock in the instant case was conducted in compliance with the Vehicle Code and the relevant case law, we will not speak to that issue.

off the road before entering the roadblock may not give rise to reasonable suspicion, unless coupled with other articulable facts such as erratic driving or traffic violations. A finding of a reasonable suspicion must be determined on a case by case basis.

The alternative is to tell police officers that in spite of their experience, they may not infer from a driver's attempt to avoid a roadblock that the driver is very likely engaged in the commission of a crime. Such a rule would seem to tell police officers to 'ignore reality.'

*Id.* at 965–66.

Similarly, in *Coffman v. State,* 26 Ark.App. 45, 759 S.W.2d 573 (1988), a police officer stopped appellant because he witnessed appellant pull into a driveway and turn his vehicle around before reaching a roadblock. The officer testified that appellant was not driving erratically, nor was he suspected of criminal activity. The sole reason the officer stopped appellant was because it appeared as though he was attempting to avoid the roadblock. An assisting officer detected alcohol on appellant's breath. After failing a field sobriety test, appellant was arrested for driving while intoxicated. *Id.* at 47, 759 S.W.2d at 574.

Appellant asserted, *inter alia,* that the stop of his vehicle was an unconstitutional seizure because there was neither probable cause nor reasonable suspicion that he had committed or was about to commit a crime. *Id.* at 47, 759 S.W.2d at 574.

Upon reviewing the record of the trial court, the Arkansas Court of Appeals stated:

There is evidence from which it could be found that the appellant was approaching a roadblock made clearly visible by the presence of police vehicles with flashing blue lights; that the appellant attempted to avoid the roadblock; and that the trained police officers who were conducting the roadblock could reasonably suspect that

one who attempted to avoid this roadblock was trying to hide some type of unlawful activity.

*Id.* at 49, 759 S.W.2d at 575.

Discussing what constitutes reasonable suspicion, the *Coffman* court, quoting *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), stated:

The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. *Finally, the evidence thus collected must be seen and weighed not in terms of library scholars, but as understood by those versed in law enforcement* [ (emphasis in *Coffman* ) ].

To a trained police officer, the fact that a motorist attempted to avoid the roadblock in this case would surely excite a reasonable suspicion that, at the very least, the motorist was drunk, driving a stolen vehicle, did not have a valid driver's license, or had some car light defect. These violations of the law would meet A.R.Cr.P. Rule 3.1 requirements since they involve danger of injury to other motorists. Therefore, we do not agree that the stop of appellant's vehicle was unlawful; and after he was stopped, the appellant's intoxicated condition was apparent and the officers had obvious probable cause to arrest him.

*Id.* at 49–50, 759 S.W.2d at 575–76.

Likewise, in *Stanley v. State*, 191 Ga.App. 603, 382 S.E.2d 686 (1989), appellant, upon reaching a police roadblock, stopped abruptly and backed his auto six to eight car lengths down the street away from the roadblock. Two officers on the scene stopped appellant and cited him for improper backing. When appellant got out of his car, the officers smelled alcohol on his breath and noticed that he had bloodshot eyes and was unsteady on his feet. Appellant was arrested. During a search of the appellant's

vehicle, the officers discovered contraband. *Id.* at 603, 382 S.E.2d at 686.

Appellant asserted, *inter alia*, that the trial court erred in denying his motion to suppress the evidence seized as a result of an unlawful stop. Affirming the judgment of the lower court, the Court of Appeals of Georgia stated:

> [A]ppellant's evasive action upon seeing a police road-block and his backing of the automobile in apparent violation of OCGA § 40–6–240(a) were 'sufficient to provide reasonable suspicion that appellant was, or was about to be, engaged in criminal activity. The officers were authorized to stop the automobile and question appellant. Therefore, the arrest following [observation of appellant's behavior consistent with driving under the influence of alcohol was] valid.'

*Id.* at 604, 382 S.E.2d at 687 (quoting *Coley v. State,* 177 Ga.App. 669, 670(1), 341 S.E.2d 9 (1986)). *See also, Boches v. State,* 506 So.2d 254 (Miss.Sup.Ct.1987) and *Smith v. State,* 515 So.2d 149 (Ala.Crim.App.1987).

In *Murphy v. Commonwealth,* 9 Va.App. 139, 384 S.E.2d 125 (1989), the Virginia Court of Appeals noted the fine line between activity which would give rise to reasonable suspicion and that which would not. Therein, the appellant made a right turn onto a side street approximately 350 feet before a police roadblock. A police officer pursued appellant. After stopping the appellant, the officer recognized him as one who he knew had had his driver's license suspended. A check with the Department of Motor Vehicles revealed that appellant had been adjudged an habitual offender. The officer then arrested appellant. *Id.* at 142, 384 S.E.2d at 126.

On appeal, Murphy asserted that the trial court erred in finding the stop of his vehicle was justified. The Virginia Court of Appeals stated:

> In *Stroud v. Commonwealth,* 6 Va.App. 633, 636, 370 S.E.2d 721, 723 (1988), a panel of this court found that an abrupt U-turn executed 100 to 150 feet before a roadblock raised a reasonable suspicion of criminal activity in the

mind of a state trooper with eleven years experience. In contrast, we find that the act of a driver in making a lawful right turn 350 feet before a roadblock does not give rise to a reasonable suspicion of criminal activity unless the driver's turn or action is coupled with other articulable facts, such as erratic driving, a traffic violation, or some behavior which independently raises suspicion of criminal activity. 'Each instance of police conduct must be judged for reasonableness in light of the particular circumstances'. Factors as subtle as the difference between a U-turn 150 feet from a roadblock and a lawful turn onto an existing roadway 350 feet from a roadblock may affect the determination. While Murphy's turn onto the dead end street may have justified a 'hunch' that the driver might be in violation of the traffic laws or might be involved in criminal activity, a legal turn into an existing roadway prior to reaching a checkpoint, standing alone, does not warrant reasonable suspicion that the operator is involved in criminal activity. Under the government's view, every citizen who turned onto a road within the sight of a checkpoint, for whatever legitimate reason, would be subject to an investigative detention. This result we cannot sanction.

*Id.* at 145–46, 384 S.E.2d at 128–29 (citations omitted).[3]

The importance of viewing the circumstances surrounding a police stop in determining whether the stop was proper

---

**3.** *See also, State v. Powell,* 591 A.2d 1306 (Me.Sup.Ct.1991), wherein a police officer observed appellee pull into a driveway 700 yards before a police roadblock, turn his vehicle around, and proceed in the opposite direction. The officer stopped appellee. Appellee was subsequently arrested and charged with driving while under the influence of intoxicating liquor. *Id.* at 1307–08.

Affirming the lower court's ruling suppressing evidence that appellee was driving while under the influence, the Supreme Court of Maine stated:

Although the officer may have suspected that Powell reversed his direction to avoid the roadblock, the court did not find that suspicion reasonable. The court found that the most the officer could reasonably conclude from Powell's actions was that he turned around in the face of police lights and cruisers in the distance. Under the circumstances of this case, the court was not compelled

was further emphasized by the Virginia Court of Appeals in the recent case of *Commonwealth v. Eaves*, 13 Va.App. 162, 408 S.E.2d 925 (1991). In *Eaves*, a police officer stopped appellee after observing him suddenly activate his vehicle's turn signal at a turn lane, make a U-turn, and proceed in the opposite direction of a police roadblock. The officer did not observe appellee commit any traffic violations. Reversing the lower court's ruling suppressing evidence that appellee was an habitual offender, discovered during the stop, the Virginia Court of Appeals stated:

> Unlike the situation in [*Murphy v. Commonwealth*, 9 Va.App. 139, 384 S.E.2d 125 (1989)] where no suspicious circumstances existed apart from a lawful turn onto an existing roadway, [the officer who stopped appellee] characterized Eaves' turn into the deceleration lane as 'abrupt,' 'immediate' and 'quick.' While Eaves was not legally required to give a signal of his intention to turn because no other vehicles were affected by his movement, the fact that he gave his signal while he was making the turn, rather than some distance before, is a factor supporting [the officer's] conclusion that the decision to turn was not contemplated but, rather, was spontaneous and as a result of Eaves' observation of the checkpoint. Under the circumstances of this case, as disclosed by the record, we hold that [the officer] possessed reasonable suspicion that Eaves' purpose in turning was to avoid the roadblock.

*Id.* at ——, 408 S.E.2d at 927.

Likewise, in *State v. Thill*, 474 N.W.2d 86 (Sup.Ct.S.D. 1991), the Supreme Court of South Dakota found that a motorist who turned around in a driveway 350 feet from a roadblock, took a circuitous route, then proceeded back in the direction of the roadblock, gave a police officer reasonable suspicion that appellant was engaged in criminal activity.

The court stated:

> to find that the officer had a reasonable suspicion of criminal activity.
> *Id.* at 1308.

Whether the avoidance of a roadblock constitutes reasonable suspicion to stop a motorist is an issue which has been addressed in several jurisdictions, with mixed results. At least five jurisdictions hold that a driver's effort to avoid a roadblock is alone sufficient to raise an articulable and reasonable suspicion of criminal wrongdoing, supporting an investigatory stop (citations omitted).

In [*State v. Talbot*, 792 P.2d 489 (Utah App.1990)], the Utah Court of Appeals examined this issue in the context of avoiding confrontation with the police. The court acknowledged the majority rule that the mere act of avoiding confrontation with the police does not create an articulable suspicion supporting a stop. The court reasoned that if a person may avoid or ignore an officer when approached on the street, a person should also be able to avoid a confrontation at a roadblock.[4]

Notwithstanding the general freedom to avoid police confrontation, we find the avoidance of the police roadblock in this instance was sufficient to create an articulable and reasonable suspicion of criminal activity. Automobiles and their use on state roads are the subject of significant state regulation (e.g. licensing, registration). This fact distinguishes the cases relied upon in *Talbot*, the majority of which involved pedestrians. And while people are not shorn of their Fourth Amendment protection when they step from the sidewalks into their automobiles [ (citing *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)) ], their actions on the road

**4.** The court in *Talbot* stated:
We hold that avoiding a roadblock, even assuming its legality, without more, does not create an articulable suspicion that the occupants have engaged in or are about to engage in criminal activity. The act merely demonstrates a desire to avoid police confrontation ... and at best only gives rise to a hunch that criminal activity may be afoot.
*Id.* at 495.
The *Talbot* court further stated, in a footnote, "By this holding, we do not mean to suggest that flight must be entirely ignored.... Flight may heighten an officer's general suspicion and provide additional justification for a stop. We merely hold that 'flight,' alone, is not sufficient to create an articulable suspicion for a stop." *Id.* n. 13.

become subject to increased state regulation and restriction. Consequently, actions taken on the road, the character of which would be innocent in another context, may well give rise to an articulable and reasonable suspicion of a violation of the law respecting the use or ownership of an automobile.

*Id.* at 87–88.

The location of a roadblock with respect to where a motorist may make a lawful turn was an important factor in determining whether a police stop was proper in *State v. Hester,* 245 N.J.Super. 75, 584 A.2d 256 (1990). Therein, appellee made a U-turn 300 to 400 feet from a police roadblock and began to drive away, but committed no motor vehicle violations. Upon witnessing appellee's actions, however, a patrolman stopped appellee, believing that he was intoxicated and trying to avoid the roadblock. The patrolman determined that appellee was sober, but a check of his driving credentials revealed that his license had been revoked. The officer issued a summons. At trial, the lower court suppressed the evidence acquired as a result of the stop. The state appealed. *Id.* at 77, 584 A.2d at 257.

Remanding the action to the lower court to determine whether a reasonable motorist would, under the circumstances, "have been aware that the police procedure in effect at the time required all motorists to proceed through the checkpoint", *Id.* at 83, 584 A.2d at 260, the Superior Court of New Jersey stated: "Common sense draws one to the conclusion that permitting motorists to choose whether they desire to cooperate with a checkpoint will reduce its effectiveness, detract from its deterrent effect, and, on occasion, create safety hazards." *Id.* at 81, 584 A.2d at 259.[5]

---

**5.** *But see, Pooler v. MVD,* 306 Or. 47, 755 P.2d 701 (1988), wherein appellee made a U-turn before reaching a sobriety roadblock conducted by the Oregon State Police. A police officer assigned to stop vehicles appearing to avoid the roadblock stopped appellee's vehicle and detected alcohol on appellee's breath. The officer then arrested appellee. On appeal, the state *conceded* that the stop of appellee was unlawful, rendering the evidence procured as a result of the stop

Having analyzed the decisions set forth above, we now address the question of whether appellant's actions give rise to reasonable suspicion under Pennsylvania law. In *Commonwealth v. Brown*, 388 Pa.Super. 187, 565 A.2d 177 (1989), we held that

A noncustodial detention or 'forcible stop' occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes. In order to justify a forcible stop under the fourth amendment, the police must point to specific and articulable facts that, taken together with the rational inferences from those facts, reasonably indicate that criminal activity may be afoot.

*Id.*, 388 Pa.Superior Ct. at 190, 565 A.2d at 178 (citing *Commonwealth v. Williams*, 287 Pa.Super. 19, 429 A.2d 698 (1981) and *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). *See also, Commonwealth v. Douglass*, 372 Pa.Super. 227, 539 A.2d 412 (1988).

■ In the case at bar, the record reveals the area in which appellant was travelling was a well-known drug trafficking area (Trial Transcript at 17). Immediately after appellant entered the housing development, he came upon the roadblock. Appellant stopped his auto, turned it around and attempted to avoid the impending encounter with the police (Trial Transcript at 20). In view of appellant's conduct in attempting to avoid the roadblock, as articulated by Trooper Paul (Trial Transcript at 19–22, 32–33) and Trooper Davis (Trial Transcript at 50–51), we find it was reasonable for these trained police officers to suspect that appellant was in violation of the Vehicle Code or engaged in criminal activity.

■ We are persuaded, to some degree, by the logic of the courts which have held that a motorist's avoidance of a roadblock is alone sufficient to arouse reasonable suspicion in a police officer that the motorist is in violation of the Vehicle Code or engaged in criminal activity. However, we

inadmissible. Consequently, the Supreme Court of Oregon did not rule on the issue presented herein.

are reluctant to promulgate a *per se* rule to that effect. We hold, therefore, that a motorist's avoidance or attempt to avoid a police roadblock must be coupled with other articulable facts in order to give a police officer reasonable suspicion that the motorist is in violation of the Vehicle Code or that criminal activity is afoot.

Instantly, the factual findings of the court below are supported by the record. We may not grant a new trial unless the court below erred in its legal conclusions drawn from these facts. We find no such error.

Judgment of sentence affirmed.

WIEAND, J., files a concurring opinion.

KELLY, J., files a concurring statement.

WIEAND, Judge, concurring:

I concur in the decision to affirm the judgment of sentence. However, because appellant failed to preserve for appellate review the legality of the police stop of his vehicle after he attempted to avoid a police roadblock, I find it unnecessary to address the merits of this issue. My review of the record discloses that this issue was not raised in appellant's post-trial motions, and, as such, has not been preserved for appellate review.

I respectfully disagree with the notion that issues not raised in post-trial motions or supplemental post-trial motions are preserved for review if they are passed upon by the trial court. This is not the law. "It is well settled that only issues raised in post-trial motions are preserved for appellate review." *Commonwealth v. Copeland*, 381 Pa.Super. 382, 385, 554 A.2d 54, 55 (1988). See: *Commonwealth v. Gravely*, 486 Pa. 194, 198–199, 404 A.2d 1296, 1298 (1979). See also: *Commonwealth v. Heckman*, 366 Pa.Super. 224, 227, 530 A.2d 1372, 1373 (1987); *Commonwealth v. Thier*, 354 Pa.Super. 7, 9, 510 A.2d 1251, 1252 (1986), *cert. denied*, 484 U.S. 846, 108 S.Ct. 142, 98 L.Ed.2d 98 (1987).

A contrary rule is not supported by the Supreme Court decision in *Commonwealth v. Sheaff*, 518 Pa. 655, 544 A.2d 1342 (1988) or by Superior Court decisions in *Commonwealth v. Sopota*, 403 Pa.Super. 1, 587 A.2d 805 (1991) (en banc) and *Commonwealth v. Hewett*, 380 Pa.Super. 334, 551 A.2d 1080 (1988). These decisions simply do not stand for the proposition that an issue which has not been raised in post-trial motions is preserved for appellate review merely because the trial court has considered the issue in its opinion. In all of the foregoing opinions, the issue to be reviewed had been raised in supplemental post-trial motions filed out of time and without prior leave of court. The trial court had nevertheless considered the issues and decided them on their merits. This was tantamount to permission by the trial court to file post-trial motions beyond the time allowed by the rule. Therefore, the issue was not deemed waived by appellant's failure to raise the issue in his initial post-trial motions. However, none of these decisions change the well settled rule that issues not raised in post-trial motions are not preserved for appellate review.

Because the legality of appellant's stop by the police has been waived, I concur in the result. I express no opinion regarding the right of police to stop and search a vehicle which has attempted to avoid a police roadblock.

KELLY, Judge, concurring:

I concur in the result. I agree that the issue of the legality of the police stop was raised below, albeit in what may be considered "boilerplate" terms. Normally, this fact could suffice to establish waiver as it has been held repeatedly that boilerplate motions do not preserve issues for appeal. *See e.g. Commonwealth v. Hawthorne*, 364 Pa.Super. 125, 527 A.2d 559 (1987); *Commonwealth v. Taylor*, 362 Pa.Super. 408, 524 A.2d 942 (1987); *Commonwealth v. Martin*, 346 Pa.Super. 129, 499 A.2d 344 (1985); *Commonwealth v. Holmes*, 315 Pa.Super. 256, 461 A.2d 1268 (1983) (*en banc*).

In this case, however, I am compelled to agree with the majority that the issue has not been waived. The purpose of considering arguments to be waived on appeal is to provide the tribunal with initial jurisdiction the first opportunity to address the issue. *See e.g. DeMarco v. Jones & Laughlin Steel Corp.*, 513 Pa. 526, 532 n. 4, 522 A.2d 26, 29 n. 4 (1987); *Commonwealth v. Milliner*, 442 Pa. 537, 542, 276 A.2d 520, 523 (1971). I discern from several recent cases that where no such purpose is served, waiver analysis should not be applied. *See Commonwealth v. Sheaff*, 518 Pa. 655, 544 A.2d 1342 (Table) (1988) (slip opinion at 1); *Commonwealth v. Sopota*, 403 Pa.Super. 1, 587 A.2d 805 (1991); *Commonwealth v. Hewett*, 380 Pa.Super. 334, 551 A.2d 1080 (1988).

Here, no purpose would be served by considering appellant's claim waived. However vague the terms in which appellant phrased the issue of the legality of the police stop of his vehicle below, the trial court apparently gleaned from the appellant's argument the precise issue brought before this Court on appeal and addressed it in its opinion. The tribunal with initial jurisdiction was therefore not only provided with, but actually seized the first opportunity to address the issue. Under these circumstances, I believe we must consider the issue preserved for appeal. *See Commonwealth v. Sheaff, supra; Commonwealth v. Sopota, supra; Commonwealth v. Hewett, supra.*[1]

With regard to the merits of appellant's claim that the police lacked reasonable suspicion to stop him after he avoided the roadblock, I must part company with the majority. In its opinion, the majority concludes that something other than an attempt to avoid a police roadblock is required

---

**1.** Moreover, in view of the probability of such an appeal returning to this and other court's through collateral challenges, it ill serves the doctrine of judicial economy to find waiver in such cases as that herein. *See Commonwealth v. Bennett,* 512 Pa. 525, 530 n. 5, 517 A.2d 1248, 1250 n. 5 (1986) ("As day follows might . . . appellee will stand before us . . . alleging ineffective assistance of trial and appellate counsel.").

to serve as a basis for an officer's reasonable suspicion that criminal activity is afoot. I cannot agree.

When a police officer requests that a motorist stop his or her vehicle, such as at a roadblock, the motorist must comply. *See* 75 Pa.C.S.A. § 6308. Indeed, safety, if not common sense, dictates this result. It would be absurd to conclude that a motorist could merely drive straight past a team of police cruisers and officers stationed at the side of a roadway, contumaciously ignoring their orders to stop, and flouting the obvious dangers involved. Moreover, the purpose of the roadblock would be hallow indeed if it allowed motorists to proceed or be detained at their own discretion.

In my opinion, there exist insufficient reasons for distinguishing, for the purposes of determining reasonable suspicion, between various means by which a motorist may fail to comply with a roadblock. However accomplished, the motorist's goal remains the same: to prevent the constitutionally authorized detention. It is true, of course, that wholly innocuous reasons, such as those based upon delay or medical emergencies, may motivate motorists to avoid a roadblock. Such reasons, however, may also prompt motorists to navigate their cars through the roadblock without stopping. We would not prevent the police from briefly detaining (and perhaps even arresting) motorists for driving through the middle of a checkpoint because of the possibility of such benign motives, and I would not allow such a possibility from preventing the police from detaining a motorist for intentionally avoiding one either. So long as the roadblock is in the motorist's sight, then it matters not, in my view, the method of noncompliance; any raises a level of reasonable suspicion.

By holding to the contrary, the majority implicitly concludes that a motorist may exercise his or her discretion in such a way as to comply or not with a roadblock. If this is so, then the very intent of the systematic detentions will be effectively thwarted if not totally eviscerated by its ruling. No such ruling or result has been previously contemplated.

Had either the Pennsylvania or the United States Supreme Court assumed that such motorist discretion would be available at roadblocks, then they need not have considered, as they did, the constitutional implications of such systematic checkpoints. *See Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987). Rather, if the discretion to simply avoid the intrusion altogether had been assumed, then the checkpoint itself would not have been considered a constitutionally recognizable seizure in the first place. *See Florida v. Bostick*, 501 U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (where an individual is free to decline an officer's request to inspect the individual or his or her property, the mere request constitutes no constitutionally recognizable search or seizure). Thus, for the respective Supreme Courts to have reached the question of the constitutionality of roadblocks wherein individuals are stopped without any particularized suspicion, each Court must have presumed, as do I now, that the roadblock is a mandatory demand to which a motorist must comply, and that the failure to so comply would not be tolerated either by the officers involved or by the courts upon review.

Because I believe that compliance with a roadblock within the motorist's sight is legally obligatory, I would hold that avoidance of such a roadblock provides a basis for the police to presumptively infer that the motorist who does so is conscious of his or her guilt and is seeking to avoid its detection. The presumption could, of course, be rebutted by facts which might otherwise dispel such suspicion, *e.g.* evidence of a medical emergency, etc. Where no evidence to rebut the presumption exists, however, I would find the officer maintains a reasonable suspicion that criminal activity is afoot and that an investigatory stop made thereafter is constitutionally permissible.

I note that I find nothing about such a presumption in any way inconsistent with either *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), or its progeny which concludes that pedestrian's flight alone does not constitute

reasonable suspicion. *See Commonwealth v. Jeffries*, 454 Pa. 320, 325, 311 A.2d 914, 917 (1973); *Commonwealth v. Martinez*, 403 Pa.Super. 125, 128, 588 A.2d 513, 514 (1991). No court of which I am aware, certainly none cited by any *sub judice*, has authorized police to conduct systematic *obligatory* "sidewalk blocks." The pedestrian, therefore, has no *obligation* to comply with any detention upon merely being viewed by police. *See Florida v. Bostick, supra.* The free citizen in a free country such as ours of course retains the discretion to run, walk, crawl or stop at that moment or any other under such circumstances, and accordingly, neither the police nor the courts can draw any adverse inferences from the exercise of *any* such discretion.

Motorists, however, are granted privileges by the state to operate their vehicles on highways that are highly regulated and of potentially great danger. *See Commonwealth v. Tarbert, supra.* Unlike pedestrains, therefore, they must submit to systematic detentions based on no particularized suspicion. *Id.* When one who is subject to such detention is observed intentionally avoiding it, we are left with facts, not available to the officer who merely witnesses a pedestrian flee, from which we may infer a consciousness of guilt and a fear of its detection. To find decisions regarding pedestrians on a sidewalk controlling in roadblock avoidance cases is essentially to discount the fact that the motorist, unlike the pedestrian, has chosen to avoid an obligatory detention. In my opinion, no reasonable police officer with roadblock experience would similarly discount such a fact. This Court should not either. *See United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981) (Evidence must be seen and weighed "as understood by those versed in law enforcement."); *see also United States v. Ceballos*, 719 F.Supp. 119, 124 (E.D.N.Y.1989) ("A virtuoso may draw reasonable inferences and suspicion of criminal involvement that would elude an amateur.").

It is important to remember that at issue is the justification for only a brief and investigatory stop. The quantum of suspicion, therefore, need not rise to a level of certainty,

120

a preponderance of evidence, or even a fair probability. The suspect's expectation of privacy is not sufficiently infringed by such governmental intrusion as to require any more than a reasonable suspicion which is a level "obviously less demanding than for probable cause." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 308 (1990) (*quoting United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989)).

I would hold that the evidence of intentional avoidance herein, *i.e.* throwing the car in reverse upon realizing that the roadblock was approaching, gave the police more than the level of suspicion necessary. No evidence served to rebut the presumption that appellant's intentional avoidance was due to his consciousness of guilt and fear of its detection. Thus, I agree that the stop was justified. Because the majority reaches this result by other means, I concur.