HOOPER, Chief Justice
(dissenting).
I must respectfully dissent from the denial of the petition. I would grant certio-rari review to examine the record and determine if any basis, other than the defendant J.W. Odom’s otherwise legal U-turn, supported the state trooper’s suspicion that Odom was driving under the influence.
State Trooper Lt. Curtis A. Wright was working at a roadblock checkpoint when he saw Odom’s car approach the roadblock and then make a legal U-turn and drive in the opposite direction. Assuming that Odom was trying to avoid the roadblock, Lt. Wright got into his car and followed Odom’s car. Lt. Wright testified that he observed no traffic violations or anything else irregular about the way Odom was driving the ear. Based on Odom’s certio-rari petition, it appears that Odom’s making the legal U-turn was the only act that could have formed the basis for Lt. Wright to have a “reasonable suspicion” that Odom was engaged in criminal activity. After pursuing Odom for two miles, Lt. Wright turned on his flashing lights and stopped Odom’s car. After Odom was unable to produce a driver’s license, Lt. Wright asked him to get out of his car. Odom was unsteady on his feet, had slightly slurred speech, and smelled strongly of alcohol. Lt. Wright did not administer any field sobriety tests to Odom but instead placed him under arrest for driving under the influence. At trial, Odom moved to suppress the evidence against him on the basis that Lt. Wright had not had a reasonable suspicion to justify stopping him. The trial court denied the motion, and Odom entered a guilty plea. The Court of Criminal Appeals, on March 24, 2000, affirmed Odom’s conviction, by an unpublished memorandum. Odom v. State (No. CR-98-2456), — So.2d - (Ala. Crim.App.2000) (table).
Odom claims that the Court of Criminal Appeals’ affirmance of his conviction conflicts with its holding in Smith v. State, 515 So.2d 149 (Ala.Crim.App.1987). In Smith, that court held that a state trooper had a reasonable suspicion sufficient to justify the initial investigatory questioning of the defendant. In that case, the defendant drove around a curve, came within sight of a roadblock, and turned quickly into the driveway of a house 200 yards from the roadblock. He drove only partially into the driveway, turned off the lights on his car (despite the fact that this incident occurred at night), and left the engine running. Given these events, the state trooper working that roadblock formed a reasonable suspicion that the defendant was attempting to avoid the roadblock. The state trooper drove his car to the driveway, parked it behind the defendant’s car, so as to block the defendant’s escape, and questioned the defendant. The defendant admitted that he did not reside at that house and did not know anyone who did. He also could not produce a driver’s license. When the state trooper asked the defendant to come to his trooper car, he noticed that the defendant was unsteady on his feet, exhibited slow reflexes, and smelled of alcohol.
In deciding Smith, the Court of Criminal Appeals recalled State v. Betterton, 527 So.2d 743 (Ala.Crim.App.1986), in which it *886 had held that a police officer did not need probable cause to believe that criminal activity was in progress before approaching a parked car, because the approach involved no initial stop or seizure. The court stated in Smith that the only difference between Smith and Betterton was that the state trooper in Smith drove his vehicle behind the defendant’s vehicle, effectively preventing the defendant from leaving, and that “[e]ven at that time, ... the trooper already had a particularized and objective basis for suspecting [the defendant] of criminal activity; thus, a Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),] stop was justified.” Smith, 515 So.2d at 151. The court further stated that the defendant’s negative responses to the trooper’s questions, coupled with his inability to produce a license, established probable cause to arrest him for driving with a suspended or revoked license.
The facts of Smith and Betterton are distinguishable from those of this present case. In Smith and Betterton, the defendants had apparently already stopped or parked their cars; thus, in those cases, law-enforcement officers did not effectuate an actual “stop” of those vehicles, whereas in this present case, Lt. Wright, who did not see Odom do anything wrong-only make a legal U-turn before reaching the roadblock-pursued Odom for two miles before turning on his flashing lights and stopping Odom. It was only after the state trooper had stopped Odom’s car and questioned Odom that he determined that Odom could not produce a driver’s license and that he had been drinking. Furthermore, in Smith, the state trooper established probable cause to arrest the defendant for driving with a suspended or revoked license, not driving under the influence, as is the situation in this present case. I would grant the petition to examine the record and determine if Lt. Wright had any basis other than Odom’s otherwise legal U-turn for determining that he had a “reasonable suspicion” that Odom was driving under the influence.