245 N.J. Super. 75 (1990)
584 A.2d 256
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CLEVE HESTER, JR., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1990.
Decided December 24, 1990.
*76 Before Judges SHEBELL, HAVEY and SKILLMAN.
Jack J. Lipari, Assistant Prosecutor, argued the cause for appellant (Jeffrey S. Blitz, Atlantic County Prosecutor, attorney; Jack J. Lipari, of counsel and on the letter brief and reply to brief of amicus curiae).
*77 Mark E. Roddy argued the cause for respondent (Goldenberg, Mackler & Sayegh, attorneys; Mark E. Roddy, on the brief).
Jean D. Barrett argued the cause on behalf of amicus curiae The Association of Criminal Defense Lawyers of New Jersey (Ruhnke & Barrett, attorneys; Jean D. Barrett, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
In this case of first impression in New Jersey, we are called upon to determine the validity of the stopping of an automobile after pursuit incidental to the operation of a driving-while-intoxicated (DWI) checkpoint. The basis for the stop was that the automobile made a U-turn, otherwise lawful, at a location approximately 300 to 400 feet before a police roadblock and checkpoint established for the purpose of detecting drivers operating under the influence of alcohol. The Law Division judge, in affirming the Municipal Court's order of suppression, found "the stop of defendant's vehicle to be a violation of the Fourth Amendment of the United States Constitution and Article 1 Paragraph 7 of the New Jersey Constitution." We granted the State's motion for leave to appeal, and now reverse and remand.
The State does not appear to contest the Law Division's factual findings. We recite those findings verbatim:
During the early morning hours of September 9, 1989,[[1]] the Egg Harbor Township Police Department set up a roadblock, to detect intoxicated drivers westbound on 322. The roadblock, which had ten officers assigned to it, was set up so that traffic was funneled into one lane.
At approximately 3:20 a.m. Patrolman Taverez, who was assigned to the roadblock, observed the defendant driving his vehicle in the direction of the roadblock. The defendant was 300 to 400 feet from the roadblock when he *78 made a lawful U-turn and proceeded eastbound on 322. Defendant did not violate any motor vehicle regulations. Moreover, the U-turn was made at the only lawful location in the area of the roadblock.
Patrolman Taverez, upon seeing the defendant make a U-turn, drove off from his location and made a stop of the defendant's vehicle. The patrolman stopped defendant because he believed the defendant was intoxicated in that he attempted to avoid the roadblock.
After the stop the officer determined that the defendant was sober. He then asked defendant for his driving credentials and upon checking, determined that his license was revoked. Defendant was issued a summons for driving on the revoked list, pursuant to N.J.S.A. 39:3-40.
Throughout these proceedings the parties have held in abeyance the issue of the constitutional validity of the DWI roadblock.[2] Defendant, however, concedes that issue only for the purpose of first determining the validity of the issue presented here: whether defendant's lawful U-turn, which permitted him to avoid the roadblock, was, without more, a sufficient basis for stopping his vehicle. The Association of Criminal Defense Lawyers of New Jersey, appearing by leave as amicus curiae, asserts that "[t]his case presents the Court with the opportunity to review the practice of designating a `pursuit vehicle' at some police sobriety checkpoints." The Association notes that this practice entails the assignment of an officer "to pull over all automobiles attempting to avoid the roadblock."
In Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the United States Supreme Court unequivocally disapproved the use of random stops in an effort to apprehend unlicensed drivers and unsafe vehicles. Id. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 674. However, in Michigan State Police v. Sitz, 496 U.S. ___, ___, 110 S.Ct. 2481, 2486-88, 110 L.Ed.2d 412, 422-23 (1990), the Court, in applying the balancing test of Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357, 362 (1979), to DWI checkpoints, *79 found that the State's interest in preventing accidents caused by drunken drivers, when viewed in light of the effectiveness of sobriety checkpoints in achieving that goal, weighed in favor of the constitutionality of the resulting seizure of the person caused by the stopping and detaining of the motorist for observation and questioning. Sitz, 496 U.S. at ___, 110 S.Ct. at 2487, 110 L.Ed.2d at 423. In rejecting the Michigan court's determination that the "subjective intrusion" caused by the checkpoints was unreasonable, the Supreme Court took the position that the intrusion was to be measured objectively by the duration of the stop and the nature of the investigation, which it found, for constitutional purposes, indistinguishable from the checkpoint stops it upheld in United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). Sitz, 496 U.S. at ___, 110 S.Ct. at 2487, 110 L.Ed.2d at 423.
The Court in Sitz specifically noted that its decision in Delaware v. Prouse resulted from the observation that there was no empirical evidence indicating that random stops would effectively promote road safety. Id. at ___, 110 S.Ct. at 2487, 110 L.Ed.2d at 423. The Court, in assessing the utility of random stops, stated that "`[i]t seems common sense that the percentage of all drivers on the road who are driving without a license is very small and the number of licensed drivers who will be stopped in order to find one unlicensed operator will be large indeed.'" Id. (quoting Prouse, 440 U.S. at 659-60, 99 S.Ct. at 1399-1400, 59 L.Ed.2d at 671). Distinguishing DWI checkpoints from the random stops, the Sitz Court reasoned that, with regard to DWI checkpoints, "the balance of the State's interest in preventing drunken driving, the extent to which this system can reasonably be said to advance that interest, and the degree of intrusion upon individual motorists who are briefly stopped, weighs in favor of the State's program." Id. Thus, the Court concluded that checkpoint stops are "consistent with the Fourth Amendment." Id.
*80 Nonetheless, the defendant here argues that a citizen has a right to avoid police confrontation, which includes the ability to lawfully avoid a DWI checkpoint. See Florida v. Royer, 460 U.S. 491, 497-98, 103 S.Ct. 1319, 1323-24, 75 L.Ed.2d 229, 236 (1983). Defendant further urges that "this court should make a separate determination that Article 1, Paragraph 7 of the New Jersey State Constitution prohibits the forcible stop of a motor vehicle for no other reason than police observation that the driver in vehicle in question attempted to avoid passing through a DWI checkpoint." Defendant cites our reference in State v. Kirk, 202 N.J. Super. 28, 49-50, 493 A.2d 1271 (App. Div. 1985), to Little v. State, 300 Md. 485, 479 A.2d 903 (1984), pertaining to the criteria for a sobriety checkpoint. He urges that we adopt that portion of the reasoning of Little which, according to defendant, establishes that an integral part of the constitutional analysis upholding DWI checkpoints includes "the right of a driver to avoid a checkpoint should he so desire and proceed on his way without any interference by law enforcement unless there is other evidence of criminal/traffic violations."
It is true that the standard roadblock procedure at issue in Little gave advance warning of the checkpoint, allowed motorists who did not wish to stop to make a U-turn and follow a different route, and permitted drivers, refusing to roll down their windows upon entering the checkpoint, to proceed without repercussion. 300 Md. at 506, 479 A.2d at 913-14. We do not, however, in our reading of Little find that these characteristics were critical to the Maryland court's sustaining of the DWI roadblock procedure; rather, these were ameliorating factors cited by the court in balancing the State's compelling interest in deterring and detecting drunk drivers against the intrusion upon individual liberties. Id. Although the presence of these characteristics may have bolstered the court's decision to classify the intrusion as "minimal," their absence in a particular checkpoint process will not necessarily make that procedure invalid. Instead, it is the outcome of a balance of these and *81 other factors that determines the constitutionality of a particular checkpoint procedure. We point out in this regard that the effectiveness of a DWI checkpoint in preventing drunk driving is a factor to be weighed in favor of the State in balancing the factors under the Brown test. Sitz, 496 U.S. at ___, 110 S.Ct. at 2486, 110 L.Ed.2d at 422.
We, therefore, specifically reject the contention that a roadblock must, as a condition of its constitutionality, provide an opportunity for motorists to avoid the checkpoint or refuse to participate. The Supreme Court, in sustaining the validity of DWI checkpoints, specifically authorized police action constituting a "seizure" under the fourth amendment, including the stopping of the motorist for observation and questioning. Sitz, 496 U.S. at ___, 110 S.Ct. at 2487, 110 L.Ed.2d at 423. In Sitz, there was no indication that the procedure in question permitted drivers, upon encountering the checkpoint, to avoid the stop. Id. at ___, 110 S.Ct. at 2483, 110 L.Ed.2d at 418. Nevertheless, the Court, after recognizing "the magnitude of the drunken driving problem [and] the States' interest in eradicating it" and weighing the effectiveness of a DWI checkpoint in preventing drunk driving against the "slight" intrusion upon stopped motorists, id. at ___, 110 S.Ct. at 2485-86, 110 L.Ed.2d at 420-21, permitted the intentional governmental termination of freedom of movement that attends DWI checkpoint stops. Id. at ___, 110 S.Ct. at 2487, 110 L.Ed.2d at 423.
We do not perceive that our State Constitution affords any greater protection than that provided by the fourth amendment in these circumstances. See generally State v. Kirk, 202 N.J. Super. at 35, 493 A.2d 1271 (state constitution may be construed to afford greater protection to privacy interest than that under the federal constitution). Common sense draws one to the conclusion that permitting motorists to choose whether they desire to cooperate with a checkpoint will reduce its effectiveness, detract from its deterrent effect, and, on occasion, create safety hazards. We are fully satisfied that where, *82 as an integral part of a DWI roadblock and checkpoint, a procedure is set up to alert motorists and to stop all vehicles coming within a reasonable area of proximity to the checkpoint, the governmental interest in the effectiveness of the checkpoint requires that we give deference to the enforcement procedures established by those governmental officials responsible for the implementation of the chosen checkpoint procedure. Sitz, 496 U.S. at ___, 110 S.Ct. at 2486, 110 L.Ed.2d at 422. Checkpoint procedures, however, must be objective and reasonable; they cannot be arbitrary or capricious. Id.
We cannot, from the present record, establish what notice was given to motorists of the presence or purpose of the roadblock, nor can we assess the ability of a motorist to observe the roadblock at the point where one would prepare to make a lawful turn. Therefore, we cannot determine whether motorists approaching the checkpoint could reasonably anticipate that their avoidance of the checkpoint would result in pursuit by a chase vehicle. We would be hard pressed to conclude that it was reasonable police procedure to lead a motorist to believe that a lawful turn was a viable alternative to stopping at the checkpoint, and then, in the absence of some other independent basis for stopping the vehicle or a reasonable suspicion that it was attempting to evade the roadblock, engage a police vehicle in pursuit of that motorist. Cf. Delaware v. Prouse, 440 U.S. at 661, 99 S.Ct. at 1400, 59 L.Ed.2d at 672; State v. Goetaski, 209 N.J. Super. 362, 507 A.2d 751 (App.Div.), certif. denied, 104 N.J. 458, 517 A.2d 443 (1986).
Defendant has not argued on appeal to this court the issue of the reasonableness of the detention of defendant while a computer check was run on his driving credentials. This issue appears to have been the sole basis for the granting of the suppression order in the Municipal Court, as well as an alternative basis for the Law Division's ruling. If the initial stop was proper, the record cannot support a finding that the subsequent intrusion was anything more than minimal. *83 Viewed objectively, we do not perceive that either the slight intrusion or the added duration of the seizure, if any, when balanced against the State's interest in determining whether the defendant was operating his vehicle with a valid license, constituted an unreasonable intrusion on defendant's individual liberties. Sitz, 496 U.S. at ___, 110 S.Ct. at 2483, 110 L.Ed.2d at 421.
The order of suppression is reversed, and the matter is remanded for further proceedings in the Municipal Court to determine the issue of whether a reasonable motorist would, in these circumstances, have been aware that the police procedure in effect at the time required all motorists to proceed through the checkpoint.
NOTES
[1] The record and the briefs contain many variations as to the date of the offense. It appears that the correct date is September 4, 1989.
[2] We do not approve of this procedure as it results in a piecemeal determination of the issues, multiple proceedings and appeals, and thus, duplication of effort.