860 A.2d 962

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. JAMES BADESSA, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 25, 2004—Decided November 16, 2004.

86

Before Judges PETRELLA, LINTNER and PARKER.

*Jacobs & Barbone,* attorneys for appellant (*Louis M. Barbone,* on the brief).

*Jeffrey S. Blitz,* Prosecutor of Atlantic County, attorney for respondent (*Danielle S. Buckley,* Assistant County Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

PARKER, J.A.D.

In this appeal, defendant challenges the stop of his vehicle after he made a lawful turn at an intersection within a two-block DWI checkpoint zone. He argues that, in the absence of signs prohibiting turns, the police lacked probable cause to stop his vehicle and that evidence of his refusal to submit to a breathalyzer test after the stop should have been suppressed.

After the municipal court judge denied defendant's motion to suppress, the matter was tried and defendant was found not guilty of driving while intoxicated (DWI), *N.J.S.A.* 39:4–50, but guilty of refusal to submit to a breathalyzer test (refusal), *N.J.S.A.* 39:4–50.4(a). Defendant appealed to the Law Division, which also denied his motion to suppress and found him guilty of refusal after a de novo review.

The checkpoint at issue was in Ventnor City on Atlantic Avenue, a four-lane highway, at the intersection of Newport Avenue. Pursuant to a general order of the Ventnor City Police Department, the checkpoint was established on the eastbound lanes of Atlantic Avenue on July 20, 2003, between the hours of midnight and 5:00 a.m. The initial sign, indicating the checkpoint, was located on the double yellow line at the center of the intersection of Atlantic and Avolyn Avenues, two blocks from the checkpoint itself. The sign was eight to nine feet tall, made of reflective material and read, "DWI Checkpoint." There was a large reflective construction barrel in front of the sign and orange cones on the double yellow line behind it, which created a funnel to move the traffic into one lane. The cones did not block the intersections within the two-block checkpoint zone. Two more signs were posted before the stop sign at the actual checkpoint, one of which

was at the second intersection of Atlantic and New Haven Avenues. None of these signs indicated that turns were prohibited.

Officer Francisco O'Neill, who was assigned to operate a chase or transportation vehicle for the checkpoint, was directed by his lieutenant to stop any vehicle that entered the checkpoint zone and attempted to avoid the checkpoint. O'Neill was in a marked police car positioned at the intersection of Atlantic and Avolyn Avenues, facing west, away from the checkpoint. He saw defendant's vehicle come down Atlantic Avenue and make a left turn onto Avolyn Avenue. There was no barrier at the intersection to prevent a left turn, nor were there any signs advising drivers that a left turn was prohibited. O'Neill followed defendant's vehicle on Avolyn Avenue and stopped it. The officer testified that after he stopped the vehicle, he observed that defendant's eyes were glassy, he noticed an odor of alcohol on defendant's breath and that defendant's speech was "a little bit slow, slurred." Defendant told O'Neill that he turned onto Avolyn Avenue because he was going to his home a short distance away on Calvert Avenue. Defendant was arrested and charged with DWI and refusal.

In this appeal, defendant argues:

*POINT ONE*

THE STOP OF DEFENDANT'S MOTOR VEHICLE WAS NOT CONSTITUTIONALLY JUSTIFIED AND ALL EVIDENCE OBTAINED THEREBY SHOULD HAVE BEEN SUPPRESSED.

## I

There is no dispute that the checkpoint was established in accordance with *State v. Kirk,* 202 *N.J.Super.* 28, 56–58, 493 *A.2d* 1271, 1287–88 (App.Div.1985). Rather, defendant contends that the checkpoint signs failed to give fair and reasonable notice to oncoming motorists that they could not turn off of Atlantic Avenue onto the two intersecting streets before the actual checkpoint. Defendant argues that the police department "merely had to put up another sign or add to the existing sign the words 'no left turn.' Alternatively, a sign could have said 'stay straight,' 'no turns,' 'you

are in a DWI checkpoint zone,' or the like." The State maintains that there were adequate signs and markers indicating that the traffic was to proceed to the checkpoint and contends that when defendant made his turn onto Avolyn Avenue, he had already passed signs indicating the roadblock ahead.

The United States Supreme Court has specifically held that DWI checkpoints are "consistent with the Fourth Amendment" because "the balance of the State's interest in preventing drunken driving, the extent to which this system can reasonably be said to advance that interest, and the degree of intrusion upon individual motorists who are briefly stopped, weighs in favor of the state program." *Michigan Dep't of State Police v. Sitz,* 496 *U.S.* 444, 455, 110 *S.Ct.* 2481, 2488, 110 *L.Ed.*2d 412, 423 (1990). We adopted a similar standard under the New Jersey Constitution in *Kirk, supra,* 202 *N.J.Super.* at 34–36, 493 *A.*2d at 1274–75. We have further held that a DWI roadblock need not "provide an opportunity for motorists to avoid the checkpoint or refuse to participate." *State v. Hester,* 245 *N.J.Super.* 75, 81, 584 *A.*2d 256, 259 (App.Div.1990). Nevertheless, we concluded that a driver must have sufficient notice of the checkpoint *and* that "avoidance of the checkpoint would result in pursuit by a chase vehicle." *Id.* at 82, 584 *A.*2d at 259.

> We would be hard pressed to conclude that it was reasonable police procedure to lead a motorist to believe that a lawful turn was a viable alternative to stopping at the checkpoint and then, in the absence of some other independent basis for stopping the vehicle or a reasonable suspicion that it was attempting to evade the roadblock, engage a police vehicle in pursuit of that motorist.
>
> [*Ibid.* (citing *Delaware v. Prouse,* 440 *U.S.* 648, 661, 99 *S.Ct.* 1391, 1400, 59 *L.Ed.*2d 660, 672 (1979); *State v. Goetaski,* 209 *N.J.Super.* 362, 507 *A.*2d 751 (App.Div.), *certif. denied,* 104 *N.J.* 458, 517 *A.*2d 443 (1986)).]

We noted in *Hester* that the record lacked evidence of what notice was provided to approaching motorists "of the presence or purpose of the roadblock, nor [could] we assess the ability of a motorist to observe the roadblock at the point where one would prepare to make a lawful turn." *Ibid.* Consequently, we remanded the matter to the municipal court for further proceedings to determine "whether a reasonable motorist would, in these circum-

stances, have been aware that the police procedure in effect at the time required all motorists to proceed through the checkpoint." *Id.* at 83, 584 *A.*2d at 260.

When the police establish a checkpoint zone over a several-block area with intersecting streets before the actual checkpoint, a citizen would not know that he or she was not permitted to make an otherwise lawful turn onto an intersecting street unless there were signs so indicating or barricades blocking the intersecting streets. If there were signs indicating that no turns were permitted, defendant would have had adequate notice that he must proceed through the checkpoint.

■ On-the-scene warnings for a DWI checkpoint must comply fully with the State and federal constitutional requirements. *State v. DeCamera,* 237 *N.J.Super.* 380, 384, 568 *A.*2d 86, 88–89 (App.Div.1989). We hold, therefore, that when a DWI checkpoint zone encompasses intersecting roads, proper on-the-scene warnings must include signs indicating no turns. Absent adequate warnings, the stop of a driver who makes a lawful turn onto an intersecting road within a DWI checkpoint zone is invalid, unless there is an independent probable cause for the stop.

## II

■ The State does not concede that the warnings here were deficient, but argues that if we find the stop invalid, "under the attenuation doctrine, defendant would not be entitled to the remedy of suppression ... because [his] voluntary and illegal act of refusal would dissipate the taint of any possible prior illegality, thus precluding the refusal from being characterized as 'fruit of the poisonous tree.'"

■ The "attenuation doctrine" is a well established exception to the Fourth Amendment exclusionary rule. *State v. Johnson,* 118 *N.J.* 639, 652–53, 573 *A.*2d 909, 916 (1990); *State v. James,* 346 *N.J.Super.* 441, 453, 788 *A.*2d 334, 341 (App.Div.), *certif. denied,* 174 *N.J.* 193, 803 *A.*2d 1164 (2002). Under the attenuation

doctrine, "if the causal connection between the illegal conduct [by law enforcement] and obtaining the evidence has become so attenuated as to dissipate the taint, the evidence is admissible." *James, supra,* 346 *N.J.Super.* at 453, 788 *A.*2d at 341. The test is not whether the police officer would have failed to secure the challenged evidence but for the illegality; rather it is "whether the authorities have obtained the evidence by means that are sufficiently independent to dissipate the taint of their illegal conduct." *Johnson, supra,* 118 *N.J.* at 653, 573 *A.*2d at 916. To determine whether the evidence is tainted by illegal conduct, we must consider (1) the temporal proximity between the illegal conduct and the seizure of the challenged evidence; (2) the presence of intervening circumstances; and (3) the flagrancy and purpose of the police misconduct. *Ibid.*; *State v. Barry,* 86 *N.J.* 80, 87, 429 *A.*2d 581, 584 *cert. denied,* 454 *U.S.* 1017, 102 *S.Ct.* 553, 70 *L.Ed.*2d 415 (1981).

We are not aware of any prior cases in New Jersey addressing the specific question of whether refusal to submit to a breathalyzer test is purged of taint by an invalid stop. We are persuaded, however, that refusal is purged of taint under these circumstances because the refusal statute is premised on a driver's consent to submit to a breathalyzer test when an officer has probable cause to believe that the driver is intoxicated. *N.J.S.A.* 39:4–50.2(a) provides that:

> Any person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood; provided, however, that the taking of samples is made in accordance with the provisions of this act and *at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of [N.J.S.A.] 39:4–50.* [Emphasis added.]

Consequently, it is not the probable cause for the stop, but the probable cause to request the breathalyzer test that provides the constitutional basis for a refusal charge. This situation is analogous to that in which a defendant's resisting arrest is chargeable, regardless of whether the initial detention was illegal. *State v.*

*Casimono,* 250 *N.J.Super.* 173, 184, 593 *A.*2d 827, 833 (App.Div. 1991), *certif. denied,* 127 *N.J.* 558, 606 *A.*2d 370 (1992), *cert. denied,* 504 *U.S.* 924, 112 *S.Ct.* 1978, 118 *L.Ed.*2d 577 (1992). *See also State v. Seymour,* 289 *N.J.Super.* 80, 85, 672 *A.*2d 1273, 1276 (App.Div.1996) (holding that the defendant's intervening act of eluding the police was sufficient to purge the taint of the officer's prior illegality in pursuing defendant); *State v. Chapman,* 332 *N.J.Super.* 452, 470–71, 753 *A.*2d 1179, 1189 (App.Div.2000) (holding that defendant's consent to search was a sufficiently voluntary act to purge the original taint from the illegal detention).

[E]xtending the fruits of the poisonous tree doctrine to immunize a defendant from prosecution for new crimes committed after police misconduct would give a criminal suspect "an intolerable *carte blanche* to commit further criminal acts," which would be "too far reaching and too high a price for society to pay in order to deter police misconduct."

[*State v. Battle,* 256 *N.J.Super.* 268, 274, 606 *A.*2d 1119, 1123 (App.Div.), *certif. denied,* 130 *N.J.* 393, 614 *A.*2d 616 (1992) (citations omitted).]

Here, the officer had probable cause to request a breathalyzer test when he observed that defendant's eyes were glassy, noticed an odor of alcohol on defendant's breath and that defendant's speech was slow and slurred. Defendant was given sufficient warning that his refusal to submit to the breathalyzer test would result in a separate charge, the penalties for which are equal to DWI. Officer O'Neill testified that he read to defendant the Standard Statement for Operators of a Motor Vehicle, *N.J.S.A.* 39:4–50.2(e), which advises the arrestee of the consequences of refusing to submit to the breathalyzer test. After reading the form to defendant, O'Neill asked if he would take the test. Defendant responded that he would not. O'Neill then read the next section of the form which advises the arrestee that he is required to take the test. Defendant said "No" again and the officer issued the summonses.

While we hold that the checkpoint signage was deficient in that it lacked warning signs advising motorists that no turns were permitted at the unbarricaded intersections within the checkpoint zone, defendant's refusal to submit to the breathalyzer test is

sufficiently attenuated from the illegal stop that evidence of the refusal is admissible.

Affirmed.