885 A.2d 430

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JAMES BADESSA, DEFENDANT–APPELLANT.

Argued September 13, 2005—Decided November 10, 2005.

*Louis M. Barbone* argued the cause for appellant (*Jacobs & Barbone*, attorneys).

*Boris Moczula*, Assistant Attorney General, argued the cause for respondent (*Peter C. Harvey*, Attorney General of New Jersey, attorney).

Justice ALBIN delivered the opinion of the Court.

The issue before us is whether evidence gathered by the police after an unconstitutional motor vehicle stop should have been excluded in a prosecution for refusal to submit to a breathalyzer test. In this case, after the unlawful stop, a police officer made observations that gave him probable cause to believe the car's driver was under the influence of alcohol. Based on those observations, the officer requested that the driver submit to the breath-

alyzer test. The driver refused to take the test and was charged under the refusal statute, *N.J.S.A.* 39:4–50.4a. He then moved to suppress all evidence, including the officer's observations, obtained following the motor vehicle stop. At a municipal court trial and again at a trial de novo in the Superior Court, Law Division, the driver's suppression motions were denied, the evidence was admitted, and the driver convicted of refusing to submit to the breathalyzer test. The Appellate Division affirmed the conviction, concluding that the exclusionary rule did not require suppressing evidence garnered from the unconstitutional stop. We disagree and therefore reverse.

## I.

### A.

During the early morning hours of July 20, 2003, the Ventnor City Police Department established a sobriety checkpoint on the eastbound side of Atlantic Avenue where it intersects with Newport Avenue in Ventnor City.[1] Police officers were directed to stop every fifth car and any illegally driven car, check the operators for signs of intoxication, and distribute literature on the dangers of drunk driving. To warn motorists of the approaching checkpoint, the police prominently placed a reflective road sign that read "DWI Checkpoint" immediately before the intersection of Atlantic and Avolyn Avenues, another such sign that read "Checkpoint Ahead" one block further east at the intersection of Atlantic and New Haven Avenues, and a final sign at the checkpoint itself. Beginning at Avolyn Avenue and ending at the DWI checkpoint, the police positioned orange construction cones along the 420–foot, three-block stretch of Atlantic Avenue to funnel motorists from two lanes into a single lane of traffic. There were no signs instructing motorists that turning onto Avolyn or New Haven

---

[1] The relevant facts, which are largely uncontested, come from the suppression hearing and trial in the Ventnor Municipal Court.

Avenue was prohibited, and there were no cones blocking such turns.

Lieutenant Robert Pettit, who was supervising the roadblock, commanded his officers to stop any vehicle that attempted to evade the checkpoint after entering the checkpoint zone, which began with the sign at Avolyn Avenue. That directive required officers to stop any vehicle making a turn onto an intersecting road within the zone. At approximately 12:48 a.m., defendant James Badessa, while traveling eastbound on Atlantic Avenue in his Ford Explorer, passed the sign that read "DWI Checkpoint," and made a left turn onto Avolyn Avenue. After observing that turn, Officer Francisco O'Neill, who manned a "chase vehicle" to pursue anyone attempting to evade the checkpoint, activated his patrol car's overhead lights and stopped defendant's vehicle.

When he approached defendant's car and asked for his license and registration, Officer O'Neill noticed that defendant's eyes were glassy and that his speech was a little slow and slurred. The officer also smelled "a slight odor of an alcoholic beverage" coming from his breath. In response to questioning, defendant said that he had had two glasses of wine over dinner. Officer O'Neill then asked defendant to step out of his Ford Explorer and perform three psycho-physical tests. Defendant failed the stand-on-one-leg and heel-to-toe tests, but successfully recited the alphabet "without singing." Based on the totality of his observations, Officer O'Neill arrested defendant for driving while under the influence (DWI).

At police headquarters, Officer O'Neill twice read to defendant the approved Division of Motor Vehicles form advising him that he was required by law to submit samples of his breath for testing and that his failure to comply would result in the issuance of a refusal summons. After defendant twice refused to submit to the breathalyzer test, the officer issued him summonses for DWI, in violation of *N.J.S.A.* 39:4–50, and refusal to submit to a breathalyzer test, in violation of *N.J.S.A.* 39:4–50.4a.

In Ventnor Municipal Court, defendant claimed that the stop of his vehicle was an unreasonable seizure in violation of the federal and state constitutions and moved to suppress all evidence obtained as a result of the illegal stop. The court denied the suppression motion and the case proceeded to trial. After hearing testimony, the court acquitted defendant of DWI, but convicted him of refusal to take the breathalyzer test. On the refusal charge, the court suspended defendant's driving privileges for six months, required that he attend twelve hours of instruction at an Intoxicated Driver Resource Center, and imposed fines totaling $579.

On de novo appeal to the Law Division, defendant again pressed his suppression motion, arguing that the motor vehicle stop was unconstitutional because the police did not give adequate warnings to motorists that, once they entered the checkpoint zone, they were not permitted to turn onto an intersecting street. The Law Division rejected that argument and found that once defendant entered into the checkpoint zone he knew or reasonably should have known that any attempt to evade the roadblock by turning onto an adjoining street would lead to a stop. Alternatively, even assuming an unconstitutional stop, the court concluded that defendant's refusal to take the breathalyzer test was an independent, intervening act that was so attenuated from the purported constitutional violation that it did not "make good law or common sense" to invoke the exclusionary rule. Because defendant only challenged the constitutionality of the stop, the Law Division upheld his refusal conviction.

### B.

Disagreeing with the Law Division, the Appellate Division held that the DWI checkpoint zone failed to provide adequate warning to motorists that a lawful turn onto an intersecting road would provide cause for a vehicular stop. *State v. Badessa*, 373 *N.J.Super.* 84, 89–90, 860 *A.*2d 962 (App.Div.2004). The panel noted that a driver "must have sufficient notice of [a] checkpoint *and* that

'avoidance of [it] would result in pursuit by a chase vehicle.' " *Id.* at 89, 860 *A.*2d 962 (quoting *State v. Hester,* 245 *N.J.Super.* 75, 82, 584 *A.*2d 256 (App.Div.1990)). More particularly, the panel concluded that the police must warn drivers entering a checkpoint zone spanning several intersecting roads that turns are not permitted and that all cars must proceed to the roadblock. *Id.* at 90, 860 *A.*2d 962. Here, the police had no independent basis for the stop other than defendant's left turn onto Avolyn Avenue—a turn that a reasonable motorist could have believed to be lawful. *Ibid.*

However, despite its finding that defendant was unlawfully stopped, the panel determined that suppression of the evidence derived from the stop was not an appropriate remedy under the " 'attenuation doctrine.' " *Id.* at 90–93, 860 *A.*2d 962. The panel observed that the " 'attenuation doctrine' is a well established exception to the Fourth Amendment exclusionary rule" that provides, " 'if the causal connection between the illegal conduct [by law enforcement] and obtaining the evidence has become so attenuated as to dissipate the taint, the evidence is admissible.' " *Id.* at 90–91, 860 *A.*2d 962 (alteration in original) (citations omitted). The panel was persuaded that defendant's refusal to submit to the breathalyzer test was an independent, intervening act, purged of any taint from the invalid stop. *Id.* at 91–92, 860 *A.*2d 962. It determined that although Officer O'Neill lacked probable cause for the stop, he had "probable cause to request the breathalyzer test," which in turn "provide[d] the constitutional basis for a refusal charge." *Id.* at 91, 860 *A.*2d 962. The panel compared defendant's refusal to take the breathalyzer test to a defendant resisting arrest or eluding the police. *Id.* at 91–92, 860 *A.*2d 962. In resisting and eluding cases, courts have not extended "the fruits of the poisonous tree doctrine to immunize a defendant from prosecution for new crimes committed after" a constitutional violation because to do so would be "too high a price for society to pay in order to deter police misconduct." *Id.* at 92, 860 *A.*2d 962 (internal quotation marks omitted). The panel concluded that "defendant's refusal to submit to the breathalyzer test [was]

sufficiently attenuated from the illegal stop" to warrant admission of the evidence. *Id.* at 92–93, 860 *A.*2d 962.

We granted defendant's petition for certification challenging the Appellate Division's holding that affirmed defendant's refusal conviction based on evidence obtained by the police following the unlawful stop. *State v. Badessa,* 182 *N.J.* 630, 868 *A.*2d 1033 (2005).[2]

## II.

We must examine the proper scope of the exclusionary rule for a violation of the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution. Both provisions protect "[t]he right of the people" to be free from "unreasonable searches and seizures." *U.S. Const.* amend. IV; *N.J. Const.* art. I, ¶ 7. In this case, the Appellate Division in effect determined that the stop of defendant's car was "unreasonable" within the meaning of those constitutional provisions.[3] That finding has not been challenged in this appeal. We decide solely whether the evidence gathered by the police after the invalid vehicular stop was properly admitted in defendant's trial for refusing to take the breathalyzer examination.

The primary purpose of the exclusionary rule "is to deter future unlawful police conduct" by denying the prosecution the spoils of constitutional violations. *State v. Evers,* 175 *N.J.* 355, 376, 815 *A.*2d 432 (2003) (internal quotation marks omitted); *see also State v. Johnson,* 118 *N.J.* 639, 651, 573 *A.*2d 909 (1990) (noting that "evidence obtained in violation of a defendant's feder-

---

[2] The State did not cross-petition to contest the Appellate Division's finding that the police unconstitutionally stopped defendant's car.

[3] To ensure that motorists are informed of what is expected of them when entering into a DWI checkpoint zone spanning intersecting roads, we suggest that the police post signs that instruct motorists that they *must* proceed to the checkpoint. For example, a sign might read: "PROCEED TO CHECKPOINT; NO TURNS PERMITTED."

al- or state-constitutional rights is generally excluded as proof against the defendant"). The exclusionary rule also "advances the 'imperative of judicial integrity' and removes the profit motive from 'lawless behavior.' " *Evers, supra,* 175 *N.J.* at 376, 815 *A.*2d 432 (quoting 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 1.5(c), at 151 (3d ed.1996)).

Under the rule, the State is barred from introducing into evidence the "fruits" of an unlawful search or seizure by the police. *Wong Sun v. United States,* 371 *U.S.* 471, 485, 83 *S.Ct.* 407, 416, 9 *L.Ed.*2d 441, 454 (1963). Those "fruits" include not only "tangible materials" seized, but also "testimony as to matters observed" in the course of a Fourth Amendment violation. *Ibid.; see also Murray v. United States,* 487 *U.S.* 533, 536, 108 *S.Ct.* 2529, 2533, 101 *L.Ed.*2d 472, 480 (1988) (stating that "exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search" and "testimony concerning knowledge acquired during an unlawful search"); *State v. Puzio,* 379 *N.J.Super.* 378, 878 *A.*2d 857 (App.Div.2005) (excluding observations made by police officer after unlawful stop of defendant's vehicle that led to defendant's arrest for DWI). Even evidence indirectly acquired by the police through a constitutional violation is subject to suppression. *Murray, supra,* 487 *U.S.* at 536–37, 108 *S.Ct.* at 2533, 101 *L.Ed.*2d at 480.

However, the exclusionary rule will not apply when the connection between the unconstitutional police action and the evidence becomes " 'so attenuated as to dissipate the taint' " from the unlawful conduct. *Ibid.* (quoting *Nardone v. United States,* 308 *U.S.* 338, 341, 60 *S.Ct.* 266, 268, 84 *L.Ed.* 307, 312 (1939)). In those circumstances, withholding from the finder of fact relevant evidence far removed from the constitutional breach is a cost not justified by the exclusionary rule. *United States v. Leon,* 468 *U.S.* 897, 910–11, 104 *S.Ct.* 3405, 3414, 82 *L.Ed.*2d 677, 690–91 (1984). Under both federal and state law, courts must determine whether law enforcement officials "have obtained the evidence by means that are sufficiently independent to dissipate the taint of their

illegal conduct." *Johnson, supra,* 118 *N.J.* at 653, 573 *A.*2d 909; *accord Brown v. Illinois,* 422 *U.S.* 590, 602–04, 95 *S.Ct.* 2254, 2261–62, 45 *L.Ed.*2d 416, 427 (1975). To determine whether there is sufficient attenuation to purge the unconstitutional taint from evidence offered by the State, we look to three factors: "(1) the temporal proximity between the illegal conduct and the challenged evidence; (2) the presence of intervening circumstances; and (3) the flagrancy and purpose of the police misconduct." *Johnson, supra,* 118 *N.J.* at 653, 573 *A.*2d 909; *accord Brown, supra,* 422 *U.S.* at 603–04, 95 *S.Ct.* at 2261–62, 45 *L.Ed.*2d at 427.

■ The State argues that defendant's refusal to take the breathalyzer test and the evidence necessary to prosecute that offense is so attenuated from the unconstitutional stop of defendant's car that the exclusionary rule should not apply. We disagree.

The refusal statute requires that the State prove that

the arresting officer had probable cause to believe that the person had been driving or was in actual physical control of a motor vehicle on the public highways or quasi-public areas of this State while the person was under the influence of intoxicating liquor or a narcotic, hallucinogenic, or habit-producing drug or marijuana; whether the person was placed under arrest, if appropriate, and whether he refused to submit to the test upon request of the officer.

[*N.J.S.A.* 39:4–50.4a.]

Thus, the State must establish that "(1) the arresting officer had probable cause to believe that defendant had been operating a vehicle while under the influence of alcohol; (2) defendant was arrested for driving while intoxicated; and (3) defendant refused to submit to a breathalyzer test." *State v. Wright,* 107 *N.J.* 488, 490, 527 *A.*2d 379 (1987). Recently, we decided that "the State must prove the statutory elements of a defendant's refusal to submit to a breathalyzer test beyond a reasonable doubt," which is the standard governing other quasi-criminal offenses prosecuted in municipal court. *State v. Cummings,* 184 *N.J.* 84, 94–96, 875 *A.*2d 906 (2005).

The State concedes that evidence obtained as a result of an unconstitutional vehicular stop must be suppressed in a DWI

prosecution. The State allows that in such a case the police officer's observations as well as the breathalyzer results would not be admissible to prove that a defendant was under the influence. The State, however, would permit the police observations suppressed in a DWI trial to be admitted in a refusal trial to prove that "the arresting officer had probable cause to believe that defendant had been operating a vehicle while under the influence of alcohol." *Wright, supra,* 107 *N.J.* at 490, 527 *A.*2d 379. When dealing with DWI and refusal prosecutions, we fail to see the consistency in that approach.

Here, in both time and place, the "challenged evidence" sprang directly from the "illegal conduct." *See Johnson, supra,* 118 *N.J.* at 653, 573 *A.*2d 909. It was immediately after the unconstitutional stop that Officer O'Neill made his observations of defendant's glassy eyes, slurred speech, and unsteady gait; that he smelled an odor of alcohol; and that he learned from defendant that he had been drinking. The acquisition of that information was a direct "fruit" of the constitutional violation. Officer O'Neill's testimony on that forbidden subject was necessary to prove an essential element of the refusal statute. Because that testimony should not have been admissible in the refusal trial, the State could not prove its case.

Under the present circumstances, we cannot subscribe to the State's position that a breathalyzer refusal and DWI are distinct for purposes of an exclusionary rule analysis. DWI and refusal to submit to a breathalyzer test are part of a comprehensive statutory scheme contained in *N.J.S.A.* 39:4–50 to –51, and may be viewed as two sides of the same statutory coin. The facts necessary to prosecute those two offenses are inextricably intertwined. After all, to secure a refusal conviction, the State must prove that "the arresting officer had probable cause to believe that the person had been driving" while under the influence and "was placed under arrest" for DWI. *N.J.S.A.* 39:4–50.4a.

The principal purpose of a police officer advising a driver about the penalties that flow from refusing to take the breathalyzer test

is to impel the driver to take the test so that the State will have the evidence necessary to prosecute a DWI charge. *See Wright, supra,* 107 *N.J.* at 504, 527 *A.*2d 379 ("The purpose of the refusal statute is to encourage all suspected drunk drivers to take the breathalyzer test."); *see also State v. Conners,* 125 *N.J.Super.* 500, 510, 311 *A.*2d 764 (Cty.Ct.1973) ("The purpose of the sanction portion of the [refusal] statute was to persuade every driver to submit to the test to eliminate any guesswork in determining the degree of intoxication." (citing *Public Hearings on Senate Bills Nos. 8 & 9,* vol. II at 18a (1966))), *aff'd,* 129 *N.J.Super.* 476, 324 *A.*2d 85 (App.Div.1974). Accordingly, the refusal statute and its severe penalties are directly related to the enforcement of the DWI statute. The State accepts that had defendant taken the breathalyzer test, the exclusionary rule would have compelled suppression of the test results. Thus, defendant's refusal to take the test did not deprive the State of evidence that might have been used in a DWI case. The State concedes that under the law the loss of the DWI prosecution is a necessary cost and consequence of the exclusionary rule. We do not see why the same logic and outcome should not apply to the refusal prosecution.

The Appellate Division found that because the exclusionary rule does not apply to resisting arrest or eluding the police following an illegal search or detention, the rule should not apply to a refusal charge. We do not find comparable this refusal case and a case involving the commission of a new crime that directly threatens public safety, such as resisting arrest or eluding the police. *See State v. Casimono,* 250 *N.J.Super.* 173, 182–85, 593 *A.*2d 827 (App.Div.1991) (resisting arrest), *certif. denied,* 127 *N.J.* 558, 606 *A.*2d 370 (1992), *cert. denied,* 504 *U.S.* 924, 112 *S.Ct.* 1978, 118 *L.Ed.*2d 577 (1992); *State v. Seymour,* 289 *N.J.Super.* 80, 86–87, 672 *A.*2d 1273 (App.Div.1996) (eluding police). Here, the act of refusal in no way endangered the safety of the police officer.

Unlike this case, in *State v. Casimono, supra,* the defendant's improper detention by the State Police did not warrant the exclusion of evidence of his resisting arrest because the defendant

had committed an entirely new crime that placed the officers in physical danger. 250 *N.J.Super.* at 183–84, 593 *A.*2d 827. In *Casimono, supra,* the defendant's "physical confrontation with the troopers created a high potential for causing injury to the officers," leading the court to conclude that "the need to protect the troopers' safety outweighed whatever marginal deterrent to police misconduct might be provided by immunizing defendant's actions from criminal liability." *Id.* at 184, 593 *A.*2d 827. In those circumstances, the commission of a new crime was an intervening act that marked "the point at which the detrimental consequences of illegal police action [became] so attenuated that the deterrent effect of the exclusionary rule no longer justifie[d] its cost." *Id.* at 185, 593 *A.*2d 827 (internal quotation marks omitted); *see also Seymour, supra,* 289 *N.J.Super.* at 86–87, 672 *A.*2d 1273 (holding that even if police did not have reasonable and articulable suspicion to stop defendant's vehicle, endangering public by eluding police at high speeds was sufficient intervening act to purge taint of earlier unconstitutional action).

In conclusion, in the present matter the police officer's observations at the scene of the illegal stop of defendant's car were necessary to prove an essential element of refusal to take the breathalyzer test. Because that evidence must be suppressed, the State cannot prove a violation of the refusal statute. We see no reason to make an exception to the exclusionary rule in this case when the facts and policy concerns are sufficiently distinct from those in *Casimono, supra,* and *Seymour, supra.*

### III.

Accordingly, we reverse the Appellate Division and remand to the Law Division for the entry of an order consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.