**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1442-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROBERT O. GOODSON, a/k/a
BOBBY EARLY, and BOBBY
GOODSON,

    Defendant-Appellant.

_____

Argued October 30, 2019 – Decided December 3, 2019

Before Judges Koblitz, Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-11-0780.

Zachary G. Markarian, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Zachary G. Markarian, of counsel and on the brief).

Milton S. Leibowitz, Special Deputy Attorney General/ Acting Assistant Prosecutor, argued the cause for respondent (Lyndsay V. Ruotolo, Acting Union County

Prosecutor, attorney; Milton S. Leibowitz, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Robert O. Goodson appeals from his October 27, 2017 conviction after his motion to suppress the evidence was denied. Because the facts track very closely with those in State v. Rosario, 229 N.J. 263 (2017), we reverse, suppressing the evidence found in defendant's car and home, vacating his guilty plea, and remanding for further proceedings.

### I. Facts Developed at the Suppression Hearing.

On August 6, 2016, Plainfield Detective Pierre McCall and three other officers were traveling in a police SUV, which, although unmarked, was a "well known police vehicle," equipped with lights and sirens. At approximately 9:00 pm, on the "hot night," the officers turned onto Sumner Avenue, a narrow residential street known to law enforcement as a "high crime narcotic area."

Immediately after turning, they "observed a brown Honda parked on the west side of the street, facing southbound." The Honda was lawfully parked outside of–defendant's residence and was "occupied by a black male," later identified as defendant, who was "sweating heavily." McCall testified that as

the officers passed defendant's car, "it appeared that he leaned back to shield himself out of our view." The officers then "backed up alongside [defendant's car]."

McCall and another officer shined their "really bright" LED flashlights inside, and McCall asked defendant "his reason for being in the area." Defendant told the officers that he came out to the car to retrieve a tablet. McCall "believed there was more to it" because he could not see the tablet from where he was seated in the police SUV, so he stepped out of the SUV and approached defendant's driver's side door, shining his flashlight into the car. McCall asked defendant his address and defendant responded that he lived where he was parked.

McCall could see a clear plastic baggie containing a green pill on the driver's side door armrest. He reached inside the car to retrieve the pill and ordered defendant out. As defendant exited, another officer smelled marijuana and asked defendant if he had any marijuana. Defendant replied he had marijuana in his pocket. Meanwhile, a third officer searched the car, finding a container of pills and heroin.

A-1442-17T4

McCall placed defendant under arrest, handcuffed him, read him the Miranda[1] warnings, and asked if defendant would consent to a search of his home. Defendant refused to provide consent. McCall then informed defendant he would obtain a warrant.

Another police SUV arrived containing four additional officers. Defendant's child's grandmother left the home, and an officer began to question her. Defendant then said he did not want anyone else involved and would consent to a search of the home.

Because defendant had a foot injury and thus did not want to accompany officers to his third-floor apartment, he provided them with his keys and instruction. The officers recovered additional narcotics, paraphernalia, and a handgun. Defendant was subsequently indicted for various drug charges as well as illegal possession of the handgun.

Defendant pled guilty pursuant to a negotiated plea agreement to second-degree possession of a firearm in the course of committing a drug offense, N.J.S.A. 2C:39-4.1(a), and was sentenced on October 27, 2017, to eight years in prison with a forty-eight month parole disqualifier.

Defendant raises the following issues on appeal:

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1442-17T4

POINT I: THE COURT SHOULD HAVE APPLIED THE SUPREME COURT'S DECISION IN STATE V. ROSARIO AND GRANTED THE MOTION TO SUPPRESS BECAUSE MR. GOODSON WAS DETAINED WITHOUT REASONABLE SUSPICION AFTER OFFICERS SAW HIM SITTING IN A LAWFULLY PARKED VEHICLE OUTSIDE OF HIS HOME SWEATING ON A HOT SUMMER EVENING.

A.   MR. GOODSON WAS DETAINED WHEN OFFICERS STOPPED THEIR SUV IN THE ROAD ALONGSIDE HIS PARKED VEHICLE AND QUESTIONED HIM WHILE SHINING FLASHLIGHTS AT HIM.

B.   OFFICERS LACKED REASONABLE ARTICULABLE SUSPICION OF CRIMINAL ACTIVITY TO JUSTIFY THE INVESTIGATIVE DETENTION OF MR. GOODSON.

C.   BECAUSE THE INVESTIGATIVE DETENTION WAS UNLAWFUL AND NO EXCEPTION TO THE EXCLUSIONARY RULE APPLIES, THE CONTRABAND SUBSEQUENTLY DISCOVERED BY THE OFFICERS MUST BE SUPPRESSED.

POINT II:   BECAUSE MR. GOODSON WAS ARRESTED, HANDCUFFED, INITIALLY REFUSED CONSENT, AND DENIED GUILT, AND THERE WAS AN OVERWHELMING POLICE PRESENCE OUTSIDE HIS HOME WHEN POLICE REPEATEDLY REQUESTED CONSENT, MR. GOODSON'S CONSENT WAS NOT VOLUNTARY.

POINT III: A REMAND FOR RESENTENCING IS REQUIRED BECAUSE THE JUDGE FAILED TO INDIVIDUALLY CONSIDER MR. GOODSON AT

5

SENTENCING, AND INSTEAD APPLIED A BLANKET POLICY OF FINDING AGGRAVATING FACTOR NINE IN EVERY CASE.

## II. Legal Standards.

"An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425–26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)).  It does so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424–25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).  We owe no deference to conclusions of law, which we review de novo.  State v. Watts, 223 N.J. 503, 516 (2015).

The Fourth Amendment of the United States Constitution, and Article I, Paragraph 7 of the New Jersey State Constitution, provide that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.  "Warrantless searches and seizures presumptively violate those protections, but '[n]ot all police-citizen encounters constitute

searches or seizures for purposes of the warrant requirement.'" Rosario, 229 N.J. at 271 (alteration in original) (citation omitted) (quoting State v. Rodriguez, 172 N.J. 117, 125 (2002)).

One such encounter is a field inquiry, "a voluntary encounter between the police and a member of the public in which the police ask questions and do not compel an individual to answer." Ibid. "The test of a field inquiry is 'whether [a] defendant, under all of the attendant circumstances, reasonably believed he could walk away without answering any of [the officer's] questions.'" Id. at 271–72 (alteration in original) (quoting State v. Maryland, 167 N.J. 471, 483 (2001)).

"In contrast to a field inquiry, an investigative detention . . . occurs during a police encounter when 'an objectively reasonable person' would feel 'that his or her right to move has been restricted.'" Id. at 272 (quoting Rodriguez, 172 N.J. at 126); see also United States v. Mendenhall, 446 U.S. 544, 554 (1980) (plurality opinion) (holding that a person is seized for Fourth Amendment purposes when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"). The crucial distinction is that while a field inquiry does not constitute a seizure for the purposes of the federal and state constitutions, and thus requires no

particularized suspicion of criminal activity, an investigative detention must be supported by an officer's "reasonable and particularized suspicion . . . that an individual has just engaged in, or was about to engage in, criminal activity." State v. Stovall, 170 N.J. 346, 356 (2002) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)). An officer's "reasonable and particularized suspicion" should be "based on the totality of the circumstances." Ibid. An officer's subjective, good-faith hunch does not justify an investigatory stop, even if that hunch proves correct. See State v. Arthur, 149 N.J. 1, 8 (1997).

"The United States Supreme Court has defined reasonable suspicion as 'a particularized and objective basis for suspecting the person stopped of criminal activity.'" Stovall, 170 N.J. at 356 (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). "In justifying an investigatory detention based on reasonable suspicion, a police officer must 'be able to articulate something more than an "inchoate and unparticularized suspicion or hunch."'" Id. at 357 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

### III. The Car Search.

As was the case in Rosario, "[t]he key issue in this case lies in the distinction between a field inquiry and an investigative detention." 229 N.J. at 272. Here, defendant was sitting in his lawfully parked car on a narrow,

residential street directly outside of his home when a police SUV containing four officers drove by him before backing up to stop alongside his car. The officers shined bright LED flashlights at defendant and into his car, before asking him what he was doing. After defendant said he lived there, and was fetching a reading tablet, one of the officers left the SUV to approach defendant, flashlight in hand, while another's flashlight also remained on defendant and his car.

In Rosario, an officer pulled up to and parked his car behind the defendant's car at a perpendicular angle, effectively blocking the defendant's car from leaving. Id. at 268. The patrol car's "alley light" was aimed at the parked car. Ibid. The officer then approached the car, asking for the defendant's "identification and driver's license." Ibid. Our Court found those circumstances constituted an investigative detention requiring reasonable and articulable suspicion. Id. at 273.

The Court rejected the argument that "because [the] defendant was right outside her residence, she could have left her vehicle, walked away from [the officer], and entered her home." Ibid.; see also Rodriguez, 172 N.J. at 129 ("[A]s a practical matter, citizens almost never feel free to end an encounter initiated by the police."). "[S]uch police activity reasonably would, and should, prompt

9

a person to think that she must stay put and submit to whatever interaction with the police officer was about to come." Rosario, 229 N.J. at 273.

The State did not negate that defendant here was blocked in by the police SUV, with other cars parked ahead and behind it. A reasonable person would not have felt free to leave under these circumstances when a police SUV backed up to stop alongside his car on a narrow residential street. "Our case law instructs members of the public to submit to a police officer's show of authority, not to look for an exit." Id. at 274–75. "Case law tells people to obey words and deeds of law enforcement that communicate demands for directed behavior and to raise constitutional objections thereafter." Id. at 275.

The moment Detective McCall stepped out of his SUV, flashlight in hand, supported by the three other officers, no reasonable person would have felt free to leave, and such an intrusion on an individual's liberty requires more than an officer's subjective belief or hunch. See State v. Coles, 218 N.J. 322, 343 (2014).

As our Supreme Court stated,

> [a] person sitting in a lawfully parked car outside [his or] her home who suddenly finds [himself or] herself blocked in by a patrol car that shines a flood light into the vehicle, only to have the officer exit his [or her] marked car and approach the driver's side of the vehicle, would not reasonably feel free to leave.

10

[Rosario, 229 N.J. at 273.]

That is almost precisely what occurred here. Thus, "defendant was faced with an investigative detention" and we must consider "whether, based on a totality of the circumstances, the encounter was 'justified at its inception' by a reasonable and articulable suspicion of criminal activity." Id. at 276 (quoting Terry, 392 U.S. at 20).

Being in a high-crime area, as here, is relevant in the totality of the circumstances analysis. See State v. Pineiro, 181 N.J. 13, 22–27 (2004) (reviewing precedent). We have, however, "rejected the notion that mere presence in an area known for its drug activity" in and of itself justifies reasonable suspicion. State v. Dangerfield, 339 N.J. Super. 229, 238 (App. Div. 2001), aff'd as modified, 171 N.J. 446 (2002).

No compounding indicia of criminal activity existed and defendant was not known to the officers. Defendant's presence in a high-crime area alone did not amount to reasonable suspicion. As we stated in similar circumstances, if that were so, "a significant portion of our urban population would be susceptible to constant police investigation. In our view that is an entirely unacceptable proposition." State v. Stampone, 341 N.J. Super. 247, 252 (App. Div. 2001).

The fact that defendant was sweating on an August evening is also not significant. See Arthur, 149 N.J. at 10–11. Detective McCall's perception that defendant leaned back as the officers passed him in an effort to hide himself is also not significant; again, Rosario is instructive. There, our Court recognized the long-standing distinction between furtive movements made during the course of a legitimate detention, which might give rise to "a reasonable suspicion that the person may be armed and dangerous or probable cause . . . that the person possesses criminal contraband," Rosario, 229 N.J. at 277 (quoting State v. Lund, 119 N.J. 35, 48 (1990), and the use of furtive movements to support a detention "in the first instance," ibid. The Court stated: "Nervousness and excited movements are common responses to unanticipated encounters with police officers on the road, and '[m]ere furtive gestures of an occupant of an automobile do not give rise to an articulable suspicion suggesting criminal activity.'" Ibid. (alteration in original) (quoting Lund, 119 N.J. at 47).

Even if Detective McCall's perception that defendant leaned back into his seat to avoid notice were true, absent other circumstances indicating criminal activity, defendant's actions were merely a "common response[] to [an] unanticipated encounter[] with police officers on the road." Ibid. Like the defendant's movements

in Rosario, that is, "'scuffling around' and leaning toward the passenger seat," ibid., defendant's observed action is insufficient to generate articulable suspicion.

Last, McCall's inability to see the tablet was not a basis for reasonable suspicion. On the stand, McCall admitted the tablet might well have not been visible from his position in the police SUV, whether it was out of view in the passenger compartment, or out of sight in a backpack or the glove compartment. Again, this is a purely innocent fact absent the "objectively reasonable belief that the collective circumstances are consistent with criminal conduct" sufficient to support reasonable suspicion. State v. Nishina, 175 N.J. 502, 511 (2003). The law enforcement officers had no reasonable and articulable suspicion of criminal activity at the time they initiated the investigative detention of defendant, and thus the encounter was an unlawful infringement of defendant's constitutional rights.

Because McCall was not lawfully in the viewing area when he saw the green pill in the vehicle, the plain view exception to the warrant requirement does not apply. The "plain view doctrine requires the police officer to lawfully be in the viewing area." State v. Johnson, 171 N.J. 192, 206 (2002). McCall should not have blocked in defendant's car and approached it on foot. See State v. Keaton, 222 N.J. 438, 450 (2015) (finding that "items discovered in defendant's car do not fall within the plain view doctrine, and were illegally

seized, because the trooper was not lawfully within the viewing area at the time of the contraband's discovery").  Thus, the evidence obtained from defendant's person and car must be suppressed.

### IV. The Search of Defendant's Home.

In Rodriguez, our Court firmly held that where a defendant was unlawfully detained, "the stop's illegality void[ed] [the] defendant's subsequent consent to search and, as a result, the fruits of the warrantless search must be suppressed." 172 N.J. at 133.  "In view of our conclusion that the officers lacked a sufficient basis to detain defendant, we need not evaluate whether his consent to the search was voluntary.  The illegal detention voids the consent."  Id. at 132.

The State argues that the attenuation doctrine applies.  Where the connection between the unlawful police conduct and the seizure is "so attenuated as to dissipate the taint" from the unlawful conduct, the evidence need not be excluded.  Brown v. Illinois, 422 U.S. 590, 609 (1975); see also State v. Badessa, 185 N.J. 303, 311 (2005).  The factors for determining attenuation are: "(1) 'the temporal proximity' between the illegal conduct and the challenged evidence; (2) 'the presence of intervening circumstances'; and (3) 'particularly, the purpose and flagrancy of the official misconduct.'"  State v. Shaw, 213 N.J. 398, 415

A-1442-17T4

(2012) (quoting <u>Brown</u>, 422 U.S. at 602–04). The burden of demonstrating attenuation rests on the State. <u>Brown</u>, 422 U.S. at 604.

With regard to the first factor, the time period here was mere minutes, and the link explicitly clear. <u>See</u> <u>Shaw</u>, 213 N.J. at 416. As the Court recognized, "[i]n cases where a confession or consent to search follows shortly after an unlawful stop, the brevity of the interval ordinarily will work against the State." <u>Ibid.</u> "[T]he closeness in time between the two may lend credence to the argument that an unlawful detention was exploited to extract a confession or consent from a suspect." <u>Ibid.</u>

With regard to the second factor, the presence of intervening circumstances, it is axiomatic that "[a] consent to search that is attributable to police misconduct involving the violations of constitutional rights may be regarded as the product of that unconstitutional conduct and an invalid basis on which to justify a search." <u>State v. Smith</u>, 155 N.J. 83, 101 (1998).

The third factor looks to the purpose and flagrancy of the official misconduct. <u>Shaw</u>, 213 N.J. at 420. While no evidence suggests the police purposefully violated defendant's constitutional rights, violations of "[t]he right of freedom of movement without unreasonable interference by government officials . . . weigh[] most heavily against the State." <u>Id.</u> at 421.

As the State has failed to demonstrate "the connection between the unconstitutional police action and the [secured] evidence[s] [was] 'so attenuated as to dissipate the taint' from the unlawful conduct," the evidence seized from defendant's home must also be suppressed. Badessa, 185 N.J. at 311 (quoting Murray v. United States, 487 U.S. 533, 536 (1988)). Because we reverse the order denying defendant's motion to suppress the evidence seized from his car and home, we vacate defendant's guilty plea.

Reversed. Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1442-17T4